OPINION. Disney, Judge: The only questions in dispute under the depletion issue relate to the value of the stock and cost or value of the Chocolate Bayou properties which constituted part of the consideration paid by the petitioner for the Norvell lease, and whether the basis should include an amount for cost of equipment. The difference between the parties on the value of the stock is whether it had a value of $10,000, an amount equal to its par value of $20 a share, as contended by petitioner, or $7,500, as determined by the respondent when computing the deficiency and contended by him upon brief. Respondent relies upon lack of satisfactory evidence before us to overcome the presumption in favor of his finding, contending that book entries showing issuance of 750 shares of stock in April, 1937, the month petitioner acquired the Norvell lease, for $20 a share, and testimony of Farnsworth that it was a cash transaction, is not enough. The stock was not listed on an exchange and there were no “over the counter” sales of the stock. Farnsworth, who had been president of petitioner since the death of Beaty in 1939, testified that he knew, independent of petitioner’s books, that the transaction was a sale for cash, that previous subscriptions of stock were made at $20 a share, and that the two individuals who purchased the stock were shareholders at the time of the purchase. Nothing in the evidence on the question creates any doubt that the sale was anything other than an arm’s length transaction. In our opinion, the sale, viewed in the light of other evidence, is enough to overcome the respondent’s finding and to establish a fair market value of $20 a share for the stock. Concerning the Chocolate Bayou property, petitioner contends that it should be included for depletion at the cost basis to it when acquired, less amortization in the amount of $5,279.04 on the leasehold interests, or the fair market value when disposed of in the transaction, the amount in either case being $33,456.19. The respondent argues that petitioner has not shown that his finding of a fair market .value of~ $2,831.18 is erroneous and that petitioner’s claim should be reduced by $6,142.23 for cost of equipment, as determined by him in computing the deficiency. The parties are in agreement that the allowance for depletion should be in accordance with petitioner’s basis in the property. Petitioner cites section 113 (a) (6) of the Internal Revenue Code as entitling it to a basis of cost to it of the Chocolate Bayou property, instead of the fair market value thereof at the time of the transfer in connection with the acquisition of the Norvell lease. The section relied upon has refer-cence, in general, to tax-free exchanges of property, and provides that it “shall not apply to property acquired by a corporation by the issuance of its stock or securities as consideration in whole or in part for the transfer of the property to it.” Here, petitioner issued 500 shares of stock as part payment of the property in question. The payment of such consideration prevents petitioner from coming within the general provisions of the statute relied upon. Petitioner’s burden was to show respondent’s valuation to be erroneous, and to establish by competent evidence the value claimed by it. The parties differ on the sufficiency of proof offered by the petitioner. The ledger of petitioner discloses cost of $77,470.47 for the entire property, and petitioner’s president testified that the value on April 3, 1937, was not less than the book figure. The effect of the testimony is that an undivided one-half interest transferred to Borsodi had a value of $33,456.19 when conveyed. The witness had knowledge of the acquisition of the property and testified that he had made a study of the value of oil properties in the area in which the lease and fees were located. His qualifications to express an opinion on the value of the property were not questioned by the respondent. Under the circumstances, we hold t!hat the evidence establishes a fair market value of the property as claimed by the petitioner. While the petitioner is claiming an amount as basis for depletion which includes the cost of equipment as determined by the respondent, it does not, on brief, oppose the respondent’s adjustment. No evidence was offered to establish that equipment was not purchased or that the cost determined by the respondent was erroneous. Equipment for wells is not subject to depletion. Secs. 23 (m) and 114 (b) (1) and (3), I. E. C. The respondent did not commit error in reducing the basis by $6,142.23 for cost of equipment. The point of difference between the parties under the third issue is whether the gain, the amount of which is not in dispute, derived from the sale of the oil and gas properties is taxable to the petitioner. There is little dispute as to evidentiary facts. The crux of the petitioner’s argument is that the transaction in substance and in form was a sale by stockholders of assets distributed to them in kind in dissolution proceedings, and resulted in no tax liability to it. The respondent’s contention, briefly stated, is that the stockholders were merely a conduit for a sale by the corporation. Petitioner’s plan was to distribute the property in kind in connection with dissolution proceedings to escape taxation, rather than to sell the assets with tax liability to it. Petitioner had that right of choice under the statute. Gregory v. Helvering, 293 U. S. 465; Wichita Terminal Elevator Co. v. Commissioner, 162 Fed. (2d) 513; United States v. Cummins Distilleries Corporation, 166 Fed. (2d) 17; Steubenville Bridge Co., 11 T. C. 789. Cf. Guinness v. United States, 109 Ct. Cls. 84; 73 Fed. Supp. 119. If the legal effect of what occurred . here for tax purposes was a sale by petitioner, it occurred notwithstanding clear intention of petitioner to avoid it. Eespondent says that the case is within the principle of Commissioner v. Court Holding Co., 324 U. S. 331, and like cases. In that case the corporation had agreed upon the terms of sale and received part of the purchase price before any steps were taken to dissolve, and upon receipt of the property in dissolution proceedings the sale was carried out by the stockholders without any substantial change in the terms of sale previously agreed upon by the corporation. The facts here are to the contrary. Petitioner had had some negotiations with individuals who had indicated desire to buy, but no offers to purchase, satisfactory to it, were received before any action was taken to dissolve, and after the adoption of resolutions to dissolve it, consistent with its declared purpose, petitioner refrained from making any effort to sell; instead, it referred all inquiries for the purchase of the assets to Burch, a stockholder. That stockholder conducted negotiations with the individuals with whom petitioner had been in touch, but received no offers to buy. The sale was ultimately made to a corporation whose representative did not initiate negotiations until after action had been taken to dissolve and then carried them on solely with Burch. In Commissioner v. Falcon Co., 127 Fed. (2d) 277, the stockholders sold property received in liquidation proceedings to a buyer with which the corporation had conducted negotiations, and the court, on the facts, held that the sale was not made by the corporation. . Here, petitioner did nothing other than refer an inquiry to buy to Burch, which action was consistent with its decision to distribute the property to stockholders instead of to sell it for its own account. Burch was not an officer or a director of petitioner and had no knowledge of the plan to dissolve until after the directors of petitioner had acted. Thereafter, his primary interest in the matter was to obtain a price for the property satisfactory to his employer, a large stockholder, and his employer’s wife. The negotiations of Burch with the buyer w7ere at all times conducted in the name of stockholders, never as an agent or representative of- petitioner. Burch did not undertake to sell more than about 98 per cent of the property, in view of the fact that he never had authority to represent all of them. The facts here are similar to the situation prevailing in United States v. Cummins Distilleries Corporation, supra. There, the stockholders on December 21, 1942, authorized dissolution, the distributions to common stockholders to be in kind or in cash, and the directors decided upon the former. Three days later some of the large stockholders appointed a committee to receive and sell the assets, consisting of whiskey certificates, and distribute the proceeds to the corporate stockholders. The plan was approved by the owners of 80 per cent of the corporation’s stock, but the committee requested the corporation to deliver all of the receipts to it, which the corporation did on December 29 by substituted receipts, upon condition that the original receipts be obtained from a bank by paying off a loan they secured. After satisfying the corporate debt with a note of the committee, secured by the substituted receipts, the members of the committee engaged a broker to sell the receipts. On January 4,1943, the committee closed a sale negotiated by the broker, and thereafter distributed the proceeds thereof to the stockholders. The certificate of dissolution was issued on December 31, 1942. The court decided that the sale was made by the stockholders. We do not regard as decisive the fact that the stockholders did not receive title to the property prior to commencement of negotiations for the sale of the assets. The telegram sent by Burch on J anuary 2, 1946, to Boyce &. Smiser, undertook no more than the submission of a firm offer to stockholders for their consideration. At that time he represented only himself and the Milbanks, who together owned about 27 per cent of the stock. After the receipt from the prospective buyers of a form of contract for execution, Burch sought and obtained the right to represent the owners of about 98 per cent of the corporation’s outstanding stock, and on January 31, 1946, as the record stockholder of and holder of title to that interest, he executed a contract to sell the property, subject to certain conditions. The deed to Burch was as complete as could be given at that time, and on April 19,1946, he received definitive deeds which were contemplated by the . earlier instrument. The sale, according to the stipulation of the parties, was not made until May 3, 1946. Thus, it appears that Burch had evidence of title, if not good title, at the time he agreed to sell. In any event, the title conveyed on April 19, 1946, which respondent does not question, was obtained prior to the closing of the sale. Assuming that the stockholders did not get ownership by the instrument executed on J anuary 28,1946, there was nothing to prevent them from entering into a contract to sell, as they did on January 31,1946, a date after formal action had been taken by the stockholders to dissolve. Howell Turpentine Co. v. Commissioner, 162 Fed. (2d) 319; George T. Williams, 3 T. C. 1002; Cooper Foundation, 7 T. C. 389; Steubenville Bridge Co., supra. Cf. Rose Kaufmann, 11 T. C. 483; affd., 175 Fed. (2d) 28. In fact the sale was conditioned upon good title in the seller. Respondent contends that formal action by the stockholders to dissolve was deferred until Burch could obtain a buyer for the property. Proof does not go that far. Formal action by the stockholders to dissolve was postponed as the result of a recommendation of Farns-worth that the corporation’s existence should be continued until preparatory work incident to the conveyance of title of the corporate property could be performed. There is nothing in the evidence to show other reason for the deferment. The formal resolution was adopted after the announcement by Farnsworth that counsel had informed him that sufficient progress had been made in connection with the con-' templated liquidation proceedings for the stockholders, if they so desired, to authorize the liquidation. At that time, January 11,1946, Burch was still negotiating with Boyce & Smiser without any defi- . nite assurance that they would make a firm offer and had no power to represent petitioner’s stockholders other than himself and the Mil-banks. Burch did not undertake to obtain authority from other stockholders to sell the property, if received, until January 18, 1946, and no binding bargain was made with the ultimate buyer until January 31, 1946. We are unable to conclude from the evidence that petitioner’s stockholders deferred formal action on a resolution to dissolve until Burch or other stockholders could obtain a buyer for the property to be distributed to them in dissolution proceedings. In Embry Realty Co. v. Glenn, 116 Fed. (2d) 682, cited by the respondent as similar to this case, the transfer was made to stockholders for the express purpose of concluding a sale previously negotiated by the corporation’s president, and the corporation was not in liquidation during the taxable year. Other cases relied upon by the respondent are also distinguishable. In Wichita Terminal Elevator Co. v. Commissioner, supra, a sale was made to a buyer with whom the corporation’s president, who, with members of his family, owned a large part of the stock, had conducted negotiations immediately prior to the transfer of the property in dissolution proceedings. Here the president was not a stockholder and never negotiated with the buyer. In-Kaufmann v. Commissioner, supra; Hellebush v. Commissioner, 65 Fed. (2d) 902, and Taylor Oil & Gas Co. v. Commissioner, 47 Fed. (2d) 109, the agreements to sell were made by the corporation before any steps were taken to liquidate its affairs. Questions of the kind being considered here must turn upon their peculiar facts. In this proceeding the dissolution of the petitioner can not be regarded as unreal or a sham. Some consideration had been given as early as 1939 to the dissolution of petitioner and about 1941 its president was of the opinion that such proceedings should be instituted when the corporate assets reached a value that would enable shareholders to recoup their investments. All of the negotiations leading up to the sale were conducted by a stockholder who also acted as an agent or trustee for other shareholders after steps had been made to dissolve. As a result, the stockholders acted at all times on their own responsibility and for their own account. Ordinary liquidation proceedings were carried out by officers of petitioner and its shareholders never served as liquidating officers. The facts here do not in principle differ materially from those prevailing in Acampo Winery & Distilleries, Inc., 7 T. C. 629; United States v. Cummins Distilleries Corporation, supra; Commissioner v. Falcon Co., supra, and United States v. Cumberland Public Service Co.,-U. S.(Jan. 9,1950). We conclude that it was error for respondent to treat the transaction as a sale made by petitioner. The net operating loss in 1946, deductible in 1944 and 1945, and overpayments in 1944 and 1945 will be computed under Bule 50, in accordance with the stipulation of the parties. Decision will be entered under Rule 50.