## BUDGET HOMES, Inc. v. STATE TAX COMMISSION.

No. 7605.   Decided September 15, 1951.   (235 P. 2d 501.)

426

See 61 C. J., Taxation, sec. 2336. Income tax evasion, legitimacy of transactions for. 27 Am. Jur., Income Taxes, secs. 248, 249; 101 A. L. R. 204.

*Thomas & Armstrong,* Salt Lake City, for plaintiff.

*Don J. Hanson, Leland S. McCullough* and *C. M. Gilmour,* Salt Lake City, for respondent.

HENRIOD, Justice.

This case is here on certiorari, Sec. 80-13-47, U. S. C. A. 1943, to review a decision of the State Tax Commission adjudging that petitioner corporation is obliged to pay a capital gains income tax for the year 1948 on sales of property made individually by its stockholders after dissolution steps were taken. We reverse the decision for insufficiency of evidence, with costs to petitioner.

The uncontroverted facts adduced at the hearing, at which a lone witness testified, are as follows: Petitioner, Budget Homes, Inc., was chartered March 4, 1947, and enjoyed, among other broad powers, the power to construct and sell homes. Two men and their wives owned the stock. Construction was financed by mortgaging each parcel upon

which a home was built, to an insurance company. The stockholders by resolution dated October 31, 1947, approved a plan of dissolution.

Petitioner concedes that one of the primary reasons for the dissolution was to save taxes otherwise payable if sale of the property were made by the corporation. The homes were completed or substantially completed at the time of the resolution, which enjoined the company to "discontinue business, be liquidated and wind up its affairs"; to distribute and convey a specific parcel to the stockholders immediately; and to distribute the remaining parcels "from time to time as the stockholders may decide and determine".

Pursuant to the plan, the shareholders endorsed and delivered their stock to the company. On November 18, 1947, before any property was actually distributed to the stockholders in exchange for the stock, one of them agreed in writing to sell a parcel to third party purchasers, deliverable later. Thereafter, on January 31, 1948, the parcel was distributed to the shareholders by corporate deed, subject to, but not by way of assumption of the mortgage, and the shareholders, as individual grantors, thereafter conveyed to the purchasers by deed. As an adjunct of the transfer, an agreement was signed by the petitioner, the insurance company, the shareholders and the purchasers, releasing petitioner's obligation on the mortgage and substituting the purchasers as mortgagors. During the next 14 months all parcels were disposed of in like manner, leaving $900 in the company, which amount had been set aside in the liquidation process to pay for equipment.

The company, as such, never advertised or negotiated for the sale of any property, executed no documents of transfer, received nothing from sales except release of the mortgage debt, and reported no proceeds from sales on its tax returns. On the other hand, the shareholders acquired and transferred title to the parcels, received the proceeds from sales, reported the same on individual income tax returns and

paid an individual income tax thereon. The Commission assessed a deficiency capital gains tax against the company, and upon hearing held the transactions to be corporate rather than shareholders' sales, on the theory that the dissolution was a sham procedure, and that looking through form to substance the transactions were really those of the corporation, from which decision this review is taken.

In resolving such cases to establish or eliminate taxability, each must rest on its own facts. We are of the opinion that applied to the facts in this case, the authorities demand reversal of the Commission's decision. The excellent and comprehensive briefs of counsel for both sides exhaust the authorities, and although a few are difficult to reconcile, we are impelled to show deference to the Cumberland case,[1] the most recent and compelling decision of our highest court. There a power company, fearing competition with cheaper available power, actively negotiated for sale of its stock to a cooperative before considering the advisability of dissolution. The cooperative refused to bargain, but countered with an offer to buy the physical properties of the company, which offer was in turn rejected because of the capital gains burden that would result in a corporate sale. To save such burden, the shareholders deliberately acquired the properties in partial liquidation and sold them to the cooperative. The court held such procedure legal and genuine, pointing out that motive in such case is immaterial in determining taxability.

The contention of the Commission that release of the company's mortgage liability was a consideration received and therefore pointed to a corporate sale, has no merit under the authorities as being decisive in a genuine liquidation. Neither is the contention that, ▮ being both directors and stockholders, the moving parties to the dissolution and sales of necessity must have

---

[1] *U. S.* v. *Cumberland P. S. C.*, 1950, 338 U. S. 451, 70 S. C. 280, 94 L. Ed. 251.

acted solely as fiduciaries for the corporation, so as to make a conveyance to shareholders and a reconveyance by them to others impossible. Lapse of time between initiation of dissolution proceedings and final liquidation 14 months later does not, viewed in the light of the factual situation in this case, reflect any disorderly or unlawful proceedings in our opinion. The fact that one of the shareholders agreed to sell before he had obtained title, adverted to by counsel for the Comission as evidence of a corporate sale, is not determinative, since such action is entirely legal and of rather common occurrence.

Accordingly to its order, the Commission apparently felt that petitioner's stockholders harbored an ulterior motive in dissolving the company, but feelings must succumb to fact, and fact must not yield to conjecture. The record reflects no improper motive. It may reflect the employment of a legally sanctioned ingenuity conceived in order to effectuate a tax saving—but such employment is a prerogative reserved unto the already overburdened taxpayer since the *Isham* case.[2] Taking advantage of a legitimate course of conduct to effect tax savings may result in collection of fewer taxes by the tax collector, but it nevertheless has judicial sanction. Great caution, therefore, should be exercised lest an honest taxpayer be required to indulge in the expensive necessity of absolving himself from suspicion. Administrative procedure is here to stay, but so is the presumption that taxpayers generally pay a full and honest tax, and a lawful plan designed to save tax burdens, if genuine, must not be interpreted administratively to be a stratagem for evasion. Constitutionally guaranteed proprietary rights must be preserved not only against judicial error, but also against administrative fiat—in cases even like this, where, we are satisfied, the Commission arrived at its conclusion honestly and after careful review, albeit in error.

---

[2] *U. S.* v. *Isham*, 1873, 17 Wall. 496, 21 L. Ed. 728.

We have refrained from commenting on but few of the authorities cited, since most of them are collected in *Amos L. Beaty & Co.* v. *Commissioner,* 1950, 14 T. C. 52, where distinctions between those cases and this are readily discernible.

WADE, McDONOUGH and CROCKETT, JJ., concur.

WOLFE, Chief Justice (concurring specially).

I concur dubitante. I concur on the ground stated in the opinion, to wit, "insufficiency of evidence" that the sale in this case was in form or fact made by the corporation. It is noted however that no steps were taken to obtain corporate dissolution until March 8, 1950, nearly 2½ years after the resolution to liquidate, distribute and dissolve. While this may be a circumstance leading to investigation of corporate activity pursuant to carrying on a business as distinguished from those consistent only with winding up, I am not prepared to say that mere passive continuance of the corporation on paper is itself a circumstance showing that the distribution was a subterfuge. Nor can I see that failure of the stockholders to surrender their stock, points to that conclusion although it may be a circumstance. I would think that if the corporation had continued the business of constructing houses or the doing of work in completing any of them after they had been distributed to the four stockholders, it might have been quite potent evidence that the corporation, still continuing its business of construction, had only denuded itself of the property for the purpose of evading the gain, which if it could be made chargeable to the individual stockholders might, being so divided, not yield the state the same tax as it would yield if disposed of by the corporation. A resolution to liquidate and distribute and a transfer in pursuance thereof might in connection with other circumstances be a subterfuge. I am not prepared to say that in our state, regardless of what may be the federal law, the courts should hold that the matter turns altogether on which—the corporation or

the stockholders—initiates and negotiates for or consummates a sale even if made after and in pursuance of a resolution by the directors to distribute. Otherwise, it would seem that the only way to prove that the directors were in effect making the sale for the corporation would be to show that the corporation did act in reference to a disposal of the property before they put down on paper a resolution to liquidate which one would expect in such case to be due only because of ignorance or a slip-up. I am loathe to believe that the distinction between avoidance and evasion rests on so infirm a basis. The web of subtle reasoning in which the federal courts have indulged to support the distinction between legitimate avoidance and illegitimate evasion is flimsy enough without going out of our way to increase the difficulties of uncovering a subterfuge. If that were the case, it would seem that if all steps were taken in the proper order there could be no element of bad faith or no such thing as a subterfuge. The corporation would always in such case exercise a right to avoid, regardless of how it carried on after distribution.

It appears that the federal government has specifically provided by Income Tax Regulation 111, Sec. 29.22(a) 20, formerly Treas. Reg. 103, Sec. 19.22(2) 21, that:

"No gain or loss is realized by a corporation from the *mere* distribution of its assets in kind in partial or complete liquidation, however they may have appreciated or depreciated in value since their acquisition." (Emphasis added.) .

Counsel for plaintiff states: "that a corporation itself cannot profit or gain" by making distribution of its properties to its four stockholders by the authority of the liquidating resolution of October 31, 1947 "is too plain for argument." Counsel therefore assumes that at the point of conveyance and distribution there was and could be no gain or loss but simply a change of ownership. This one act of conveying corporate assets by way of partial or complete distribution to stockholders will not in itself produce a cor-

porate gain or loss but the whole scheme or plan must be scrutinized to determine whether it was designed to gain the advantage of corporate privileges such as limited liability while engaged in construction, but evade payment of the franchise tax, the amount of which under our law is measured by the corporate income. If such were the accomplished purpose, it might be evasion and not avoidance. Certainly, the word "mere" in the federal regulation is pregnant with meaning. It implies that there may be acts done other than distribution in kind which might give rise to corporate gain or loss.

But the regulation does not touch the Utah State Income Tax system. It may be that counsel is correct in asserting that a mere conveyance of a corporation's property to its stockholders by way of distribution as a matter of fact regardless of regulation or the absence of it does not entail a loss or a gain. But in this case we have more than one act. We have a series of acts all part of a plan to convey seemingly for one purpose only, to wit, to make the gain from sale price over cost of production the gain of the shareholders and not the corporation.

True, if it is affirmatively permitted, or perhaps not prohibited, a method of avoiding a tax is allowed and the scheme is not considered an evasion. But assuming that "avoiding" a tax connotes something permissible and involves no bad faith, while the term "evade" connotes a device or design improperly to deprive the taxing authority out of what the law intends it to have—at times a very nebulous and shadowy distinction—it does not follow that because the federal courts including the highest federal court of the land hold that the federal taxing system permits avoidance under a certain configuration of facts that our system will likewise permit it.

In this case according to the plaintiff, the Tax Commission didnot by its findings conclude that the company continued to operate by going on with the finishing of the

houses after the resolution to liquidate. Plaintiff contends that

"the Commission's own findings declare in this regard that the liquidating resolution recited that the houses had been substantially completed and the company's purposes fulfilled * * *."

Whether such declaration in the findings is equivalent to a finding that the houses were completed is not clear to me, but in the light of the fact that the findings do not expressly state that building of the houses continued after they were conveyed to the stockholders, or at least after the resolution to liquidate, it should be assumed that in spite of the statement in defendant's brief that building continued, there was no evidence of that fact. One may wonder why the company was ten months in distributing all its houses and whether there was not during this period substantial work of construction taking place.

There was evidence from which it might be inferred that the company had the obligation to see that the meter boxes and road work were done even up to about March 8, 1950. Whether this could be considered corporate activity in construction of the houses is not clear and whether if so such construction was a detail and not inconsistent with substantial completion is also not clear.

The plaintiff contends that whether or not the houses were not substantially completed before the passage of the resolution to liquidate is immaterial because the sole test is whether the company had anything to do with initiating, negotiating or consummating the sale of the houses after the resolution or at least after conveyance of the houses. I cannot at this time accept that view for reasons above stated. It places too much effect and weight on a resolution by directors in cases where it is quite obvious that the testimony of the directors and stockholders was such as to make it incapable of contradiction and thus leave the issue of avoidance or evasion entirely in their hands.

It is relevant to what has been said above to point out that it must be kept in mind that the federal and state tax systems are entirely separate, founded upon separate laws, which laws are to be construed by the courts of respective governments. And in certain instances, they may be bottomed on different tax concepts. Although the language of the Utah act is for the most part fashioned after that of of the federal law and as to definitions may use the exact words, the taxation concepts and purposes may and it appears to me are different.

For instance, while the definition of gross income is the same in both acts, the tax on corporations for the privilege of carrying on business in the corporate form in this state makes the net income the measure of the base upon which the tax for these corporate privileges is imposed. The federal act appears to impose the tax not as an excise but as an ad valorem tax on property acquired by the corporate taxpayer—a direct tax on its income as a means of raising money for government purposes.

The purposes and philosophy of taxation back of the two systems and the concepts used to effectuate these will play a part in the interpretation of the respective tax laws by the tax collecting authorities and the courts of the two sovereignties. But I am unable to convince myself that, because our Corporate Franchise Tax appears to be an excise tax on corporate privileges granted, it furnishes any reason which should influence us in our determination of the question here presented, to wit, whether conveyance of the finished houses to the stockholders and the sale of them by such stockholders should be considered sales by the corporation. I do not think because the corporation is granted power to build and to dispose and for those powers and privileges is charged a tax measured by a rate on net income it must exercise all of them and that if it conveys its property to its stockholders by way of distribution, the corporation and not the stockholders will be considered as having the sales. There is nothing which compels the corpora-

tion to use all of its powers in order to increase the amount of its gains so that they will inure to the benefit of the taxing authority. The government which imposes the tax may adopt a policy of treating sales by the individual stockholders as sales by the corporation if it desires to prevent the corporation from obtaining benefit from ceasing to exercise its corporate functions at the very point where such exercise would result in gains to the corporation. But it would appear that this would be for the legislature and not for the courts.

The courts may determine whether the plan of the corporation to distribute its assets in whole or in part to its stockholders, or what is its equivalent approached from the stockholders' side, a plan of the stockholders to take over the property of the corporation and sell it themselves and thus convert the gain from a corporate to an individual gain, is in fact and reality a scheme to continue the use of the corporation as a shield to obtain limited liability after distribution while they as individuals reaped the results of the corporation's activities. And this depends on factors other than a resolution to liquidate and dissolve plus conveyance of assets in kind to the stockholders.

Contrary to assertions of counsel for the plaintiff, I incline to think as I stated above that it depends in our state, if not under federal authority, in part at least upon evidence of the continued use of the corporation in its activities for the benefit of the stockholders inconsistent with dissolution. While federal cases are persuasive to us, they are not binding. While the record leaves me in considerable doubt whether the plaintiff engaged in substantial construction of the homes involved in this suit or others and while I am not entirely satisfied that relief of the corporation from liability for the mortgage indebtedness including deficiencies may not be such consideration at least if attended by the other factors above mentioned as to give it the aspect of a corporation sale—the stockholders holding the prop-

erty in trust for the corporation—I am resolving my doubts in favor of a concurrence in the result.