411 P.2d 831

Dona L. JOHNSON, on Behalf of herself and all other taxpayers of the State of Utah, Plaintiff and Respondent,

v.

STATE TAX COMMISSION of the State of Utah, Defendant and Appellant.

No. 10555.

Supreme Court of Utah.

March 4, 1966.

———◆———

F. Burton Howard, Sp. Asst. Atty. Gen., Phil L. Hansen, Atty. Gen., Salt Lake City, for appellant.

Allan E. Mecham, Salt Lake City, for respondent.

CROCKETT, Justice.

Plaintiff sought a declaratory judgment that: (1) she and other taxpayers who filed their tax returns for 1965 before January 1, 1966, were not subject to increases in state income taxes enacted by Chapter 125, S.L.U.1965 [1]; and (2) that this results in unequal and discriminatory taxation which renders that taxing statute unconstitutional and void. From a judgment of the District Court sustaining plaintiff's position as to

1. Chapter 125, Session Laws of Utah 1965, increases the tax rates on net taxable income of residents of the state from: 1% to 2% on the first thousand dollars; from 2% to 3% on the second thousand; from 3% to 4% on the third thousand; from 4% to 5% on the fourth thousand; from 5% to 6% on the fifth thousand dollars; and instead of a maximum of 5% on all additional income imposes a new maximum of 6½% on all income over five thousand dollars.

proposition (1), the Tax Commission appeals; and from that court's rejection of proposition number (2), the plaintiff cross-appeals.

The plaintiff bases her contention on Sec. 5 of that chapter:

The tax rates provided for herein shall apply to all returns filed on or after January 1, 1966 for taxable years commencing on or after January 1, 1965.

■■■ The fundamental consideration which transcends all others in regard to the interpretation and application of a statute is: What was the intent of the legislature?[2] All other rules of statutory construction are subordinate to it and are helpful only insofar as they assist in attaining that objective. In determining that intent the statute should be considered in the light of the purpose it was designed to serve and so applied as to carry out that purpose if that can be done consistent with its language. It is plainly evident here that the primary purpose of the legislature was to put into effect an increase in state income taxes from and after January 1, 1965.[3] As will appear below, upon an analysis of the language of the quoted section, we can see nothing to indicate that it intended any such unequal and discriminatory application of

the new tax as contended for by the plaintiff.

■■ It is of the utmost importance to bear in mind that this is a tax on *income* earned during a taxable year and not upon *returns*. The production of the income is the thing upon which the tax is based; whereas the return is merely a compilation of data giving information as to the amount of tax due. It is thus the documentary evidence of the amount of the tax, but the document itself is not the subject of the tax. The taxes would become due and collectible even if no return were filed. Keeping the foregoing in mind, the reasonable interpretation of Sec. 5 quoted above is that the new tax rates should apply to income for taxable years commencing on or after January 1, 1965, and the reference to when the returns are filed is an incidental recital which is not controlling and should not be used to defeat the purpose of the statute. This conclusion is further borne out by other considerations we mention presently.

The legislature could and undoubtedly did envision this tax as applying to incomes for taxable years commencing on or after January 1, 1965, as is stated; and to returns therefor filed in the normal course of events and in conformity with law. A read-

2. Allen v. Board of Education of Weber County School District, 120 Utah 556, 236 P.2d 756; Rogers v. Wagstaff, 120 Utah 136, 232 P.2d 766, 26 A.L.R.2d 1316.

3. We so held in Mecham v. State Tax Commission, 17 Utah 2d 321, 410 P.2d 1008, No. 10410, Utah Supreme Court, February 14, 1966.

ing of our income tax statute without reaching for a preconceived conclusion, as do plaintiff and her advocates, reveals with ample clarity that it is contemplated that income tax returns for the calendar year shall be filed between January 1 and April 15 of the following year. Sec. 59–14–19 provides that taxes for the preceding calendar year, "shall be paid on the 15th day of April following the close of [that] year." And Sec. 59–14–17 requires that returns based on calendar year income "shall be made * * * on or before the 15th day of April in each year * * *." This can only mean between January 1 and April 15. There is thus no authorization for filing a return before the end of the year for calendar year taxpayers such as plaintiff and those similarly situated; and there is nothing in the law to suggest that such early filings are provided for or that they are reasonably to be anticipated.[4]

There is another practical reason why a taxpayer normally does not file his return and pay his taxes before the end of the year and why it is not to be expected that he will do so. Until that time it is virtually impossible to tell what his net income will be. It may for some unforeseen reason increase. For example, he may receive a bonus from his employer; a business transaction may materialize; or he may fortuitously get income from some other source. Conversely, his income may unexpectedly diminish. He may become disabled; or even die. Or he may incur unexpected deductible expenses.

For these reasons: that such early filing is not provided for by law;[5] that the income cannot be exactly ascertained; and because of the well known fact that people generally are not so anxious to pay taxes that they rush in and pay them early, it is most reasonable to believe that the legislature, in enacting a tax on "taxable years commencing on and after January, 1965" properly assumed and recited that this would be "on returns filed on or after January 1, 1966" which is in accordance with both the law and the custom.

The soundness of the foregoing assumption is corroborated by information furnished us by counsel: that in other years a mere handful, less than 100 out of a total of over 330,000 taxpayers, normally filed before the end of the preceding year. It is

---

4. There is an exception for individual taxpayers who pay on a fiscal rather than a calendar year basis. But this is a small de minimis minority, less than 100 out of a total of over 330,000 taxpayers, which would not affect the validity of this statute. See Welch v. Henry, 305 U.S. 134, 59 S.Ct. 121, 83 L.Ed. 87, stating, "Possible differences in tax burdens, not shown to be substantial, or which are based on

discrimination not shown to be arbitrary or capricious, do not fall within the constitutional prohibition."

5. Though not expressly authorized by law, we can see nothing wrong with an early filing if on the correct rate and accepted by the Tax Commission. But it would confer no advantage unless the law so provided.

of some significance that for the year in question, when in December, 1965, there was some publicity concerning possible uncertainty in this statute, the plaintiff and about five thousand taxpayers followed the unusual procedure of filing early.

Would it may be thought that these people were prompted by altruistic motives, anxious to get their taxes paid as early as possible and bear their share of supporting the state government. But no such conclusion is warranted. That this early filing was an irregular procedure, not authorized by law, in an effort to escape the effect of the increased tax rate is obvious. Perhaps this should be neither surprising, nor particularly censurable. We suppose most everyone would like to escape or ease the admittedly too heavy burden of taxes. But the matter of imposition of this tax is for the legislature. It is our duty to ascribe to it the correct motive of attempting to make the application of the tax fair and equal unless the language of the statute is clearly to the contrary. And where its language would permit of two possible applications, one will be chosen which makes it apply fairly and equally to all similarly situated rather than a construction which would render it unequal and discriminatory and therefore unconstitutional.[6] The latter would be the result of giving the plaintiff and other persons who filed before the end of the year the advantage of the old rates.

We decide as we have herein in awareness of another well known rule: that in case of uncertainty as to the proper application of a tax statute it generally should be construed favorably to the taxpayer. On the other hand the court should not accept an interpretation which places undue importance on words subordinate to the plainly apparent objective of the statute in order to reward persons who resort to some unusual and not reasonably to be expected procedure in order to circumvent its purpose. Rather it should be so applied as to give effect to that purpose and with due consideration not only to the rights of the plaintiff and the minority similarly situated, but also to the entitlement of all the other taxpayers of the state, who file in conformity with the law, to uniformity of treatment and the equal protection of the law. If the legislature had intended to give the advantage of the lower old tax rates to those who filed early, it undoubtedly would have said so in a more direct way and would not have left it to the tortuous logic and irregular procedure that plaintiff and

---

6. As to the reluctance of courts to strike down legislative acts and that all doubts must be resolved in favor of constitutionality see Newcomb v. Ogden City Public School Teachers' Retirement Comm., 121 Utah 503, 243 P.2d 941; Howe v. Tax Comm., 10 Utah 2d 362, 353 P.2d 468; Salt Lake City v. Tax Comm. of Utah, 11 Utah 2d 359, 359 P.2d 397; State Water Pollution Control Bd. v. Salt Lake City, 6 Utah 2d 247, 311 P.2d 370.

others have attempted to employ to reach that result.[7]

On the basis of the foregoing discussion it is our opinion that it is not reasonable to believe that the legislature had in mind any such inequality of taxation as plaintiff contends; and that the sensible and practical construction of the statute, which brings about equal and non-discriminatory taxation, and accomplishes the legislative purpose, is that the new tax rates are intended to apply to income on and after January 1, 1965, and that the filing of returns, regularly or irregularly, does not change the effect of this taxing statute nor destroy its validity.

The decision of the trial court that plaintiff and other taxpayers who filed their 1965 tax returns before January 1, 1966 were not subject to the tax increases provided for by Chapter 125 S.L.U.1965 is reversed. This eliminates the question as to whether excluding them from the increased rates would be discriminatory; and that part of the decision holding the statute constitutional is therefore affirmed.

No costs awarded.

7. While we have met and dealt with the issue here presented, it is of interest to note the anomaly of plaintiff's position. Her claim of unequal taxation and resulting unconstitutionality is necessarily based on her claim that she is given an advantage over other taxpayers. Yet it is usually held that one must himself suffer damage or have his rights adversely af-

McDONOUGH, WADE and CALLISTER, JJ., concur.

HENRIOD, Chief Justice.

The upshot of the main opinion is that all calendar year taxpayers must pay the increased rate. I concur in such a practical result, since otherwise there would be a discrimination between two segments of the same class of taxpayers.

However, I cannot travel the route of reasoning chosen by the majority, since I am convinced the decision amounts to judicial legislation.

The statute says "the TAX RATES * * * shall apply to all returns FILED ON OR AFTER January 1, 1966 * * *." This language is clear and unambiguous and susceptible of only one reasonable construction,—that the rates apply to taxpayers filing on or after that date, *but not to those filing before.*

The main opinion, I think, in substance and effect says the legislature either was stupid or made a mistake in using such language and the court must rectify it by deleting it. In either event, it is none of this court's business to delete the language,—which this court now has done.[1]

fected before he can question the constitutionality of a statute. See State v. Kallas, 97 Utah 492, 94 P.2d 414; State ex rel. Johnson v. Alexander, 87 Utah 376, 49 P.2d 408; State ex rel. University of Utah v. Candland, 36 Utah 406, 104 P. 285, 24 L.R.A.,N.S., 1260.

1. Sutherland, Statutory Construction, 3rd Ed. § 4705; Park & Recreation Commis-

. The base upon which the decision builds its structure is its contention that the tax is on *income* and not upon the *return*. Of *course* it is on income and not upon a piece of paper. But deciding this case on such a tissued truism, has no basis in realism or proper statutory construction, in my opinion.

Although the tax is on income and not on the piece of paper, the plain wording of the statute says that filing it on or after the date mentioned is the operational fact that charges those filing after that date with the payment of the increased rates, and with inescapable logic, does not impose the tax on those filing before that date. Whether the legislature was right or wrong is one thing, but according to its clear language January 1, 1966 was the magic date that required filers of returns thereafter to pay the higher tax.

I am confident that any taxpayer reading the statute would read it that way, as did 6,000 of them when the matter generally was called to their attention in December 1965, two weeks before the deadline. My guess is that many more thousands would have filed early had they been alerted sooner. The lower court read it that way. A good many tax lawyers and consultants read it that way. What is more, the Tax Commission itself read it that way, until this suit was instituted. As late as December 17, 1965, in the written brief and oral argument presented to this court in the Mecham case [2] the Commission said that "It should be noted that *the Bill does not require returns filed in 1965 to be subject to the increased rates,* but only returns filed on or after January 1, 1966." For what minuscule value it has after this decision, I join those I have mentioned in reading it that way too.

I think the legislature meant what it said. I think it could have made a mistake by provoking a constitutional question as to discrimination, which this court might decide one way or the other. But this court has ducked that real issue and has decided this case by a play upon words, on the untenable and easy-out grounds that the legislature really and truly could not have meant what it clearly said. So we will legislate otherwise to correct its mistake or stupidity. This, this court is not supposed to do.

The majority opinion says the intent of the legislature is of prime importance in interpreting a statute. This principle is conceded, but is inapplicable to this case. The language of the act is crystal clear, and this court legitimately cannot say that the legislature did not intend to create two classes of taxpayers,—those filing before

sion v. Department of Finance, 15 Utah 2d 110, 388 P.2d 233, 1964; Ringwood v. State, 8 Utah 2d 287, 333 P.2d 943, 1959; Budget Homes v. State Tax Com-

mission, 120 Utah 425, 235 P.2d 501, 1951; United States v. Isham, 17 Wall. 496, 21 L.Ed. 728, 1873.

2. Case 10410, this Court, 410 P.2d 1008.

and those filing after. On the contrary, kindred statutes make it quite evident that the legislature meant just that, and has done so before.

Under existing statutes a fiscal taxpayer whose fiscal year commences on November 30, 1965, and whose income is $1,000 per month pays the old rate on $11,000, thus saving 30% on $11,000, while his next door calendar year neighbor, earning exactly the same amount in 1965, pays a 30% higher rate on $12,000.

Then again there are those who earned income who may under our statutes, file in 1965 and save 30%, such as those filing on an annual basis, those who have moved out of the state, representatives of those who may have died in 1965, and possibly others.

The statement in the main opinion that because 59–14–17 says that returns for calendar year income "shall be made on or before the 15th day of April of each year," that means between January 1 and April 15, is a conclusion I don't get. A return made "on or before April 15" can be made before April 15, if it is made on December 15, 1965. I am sure that one knowing what his 1965 income was, planning to leave the country for a time and place when and where he could not file between January 1 and April 15 would have a perfect case to prove the main opinion's assertion quite unconstitutional if he were penalized for filing not between January 1 and April 15, but in the previous December.

The majority opinion suggests as a reason for its decision, that it is virtually impossible for a taxpayer to tell what his income will be until year's end, because he might get an unexpected bonus or suffer a sudden loss. This is captious reasoning, since an amended return can take care of such contingencies.

I think the statute, as worded, before this decision, is not constitutional because it would operate with discrimination.