J. R. BAGNALL, aka Joseph R. Bagnall, and Florence Bagnall, Plaintiffs-Appellants and Cross-Respondents,

v.

SUBURBIA LAND COMPANY, an Idaho Corporation, et al., Defendants-Respondents and Cross-Appellants.

No. 13753.

Supreme Court of Utah.

Oct. 31, 1975.

Ronald Brent Boutwell, Jackson Howard of Howard, Lewis & Petersen, Provo, for appellant.

Richard L. Maxfield of Maxfield, Gammon, Ellis & Dalebout, Provo, for United Paint, respondent.

Robert L. Lord, Salt Lake City, for Suburbia and Romero, cross-appellants.

HENRIOD, Chief Justice:

Appeal from 1) a judgment terminating a real estate contract, in favor of Bagnalls and against some of the defendants but not United Paint, involving a 540-acre tract, and 2) a quiet title judgment in favor of United Paint and against Bagnalls, involving 140.15 acres included in the 540. Af-

firmed as to 1), and remanded as to 2) for trial on the merits.

This case really represents two consolidated cases.

In 1) above, counsel for defendants (a) designated only those parts of the record favorable to their position, much of which appears to have been controverted, according to the court's written findings, and (b) practically no references were made to the record to substantiate the factual situation represented by counsel to have existed. Counsel for plaintiffs did not employ the provisions of Rule 75, Utah Rules of Civil Procedure, to designate any part or parts of the record in support of plaintiffs' contentions. After the filing of defendants' *brief*, counsel for plaintiff filed a somewhat abortive, belated and unsuccessful request of this court to allow him to designate parts of the record, which, if permitted, would not have been in harmony with the spirit of Rule 75.

■ As a result we have before us briefs of both sides loaded with unreferenced, self-serving statements of facts and contentions, with an apparent invitation that we perform their procedural obligations and conduct their research. We cannot indulge them such luxury under the circumstances here. This court, therefore, under elementary principles anent appellate review, in this particular case will presume the findings of the court to have been supported by admissible, competent, substantial evidence [1]—to any criticism of which, by any litigants, the court feels constrained to turn a deafened ear.

■ As to 1) above: the trial court found: that on September 1, 1952, an agreement between Hanna and J. R. Bagnall, Sellers, and Wallace J., Jean B. and Glenna A. Nyberg, Buyers, was signed involving the real estate, subject of this litigation; ten years later, Suburbia of Idaho

represented it had acquired the Nyberg interests, which led to a modification agreement between Bagnalls and Suburbia, whose agent represented it had acquired Jean B. Nyberg's individually claimed and acquired one-half interest in 140.15 acres of the tract; that at that time the charter of Suburbia of Idaho had been forfeited; that nonetheless, Suburbia of Idaho attempted to transfer its assets to other companies whose appellations contained the word "Suburbia," which attempts were void; that all of such companies were fictitious; that all the so-called transferees (had they been legitimate), were delinquent on the contract; that notice of default was given, with 30 days allowed to become current, else the contract would terminate; that there were no oral or other meritorious, compensating facts representing a defense to plaintiffs' action, which circumstances resolve the action mentioned in 1) above in favor of plaintiffs.

■ As to 2) above, the action was disposed of on Summary Judgment. Hence the trial court determined that there was no genuine issue of fact to resolve and consequently as a matter of law, held that United Paint was owner of the 140.15-acre tract included in the larger one.

Difficulty with such conclusion seems to be apparent when the following circumstances are noted:

On March 3, 1962, a Warranty Deed was executed and delivered by Jean Nyberg Shirk to Utah Valley Land and Development *Corporation*, a nonentity, purportedly conveying a one-half interest in the 140.15 acres mentioned above. 20 days later on March 23, 1962, the Valley Land and Development *Company* legitimately was born, which defendants, so to speak, simply urged was the visible corpus of a living corporate fetus,—or alter ego, if you please. On May 20, 1971, more than nine

1. *Sandall v. Sandall*, 57 Utah 150, 155, 193 P. 1093, 15 A.L.R. 620 (1920); *In re Voorhees Est.*, 12 Utah 2d 361, 366, 366 P.2d 977 (1961); *James Mfg. Co. v. Wilson*, 15 Utah 2d 210, 213, 390 P.2d 127 (1964); *Lepasiotes v. Dinsdale*, 121 Utah 359, 242 P.2d 297 (1952).

years later, Mrs. Shirk executed and delivered a quitclaim deed to the plaintiffs herein purportedly conveying to them the same property,—which deed was recorded on May 28, 1971. Five months later on October 5, 1971, the Utah Valley *Corporation,* not the *Company,* purportedly conveyed the property to United Paint, which deed was recorded October 20, 1971. An affidavit signed and filed by the Bagnalls, as an adjunct to the discovery process leading to the Summary Judgment, avowed that they were unaware of the vintaged nine-year old, but prior deed by their grantor, Mrs. Shirk, to the Utah Valley *Corporation.*

Under such circumstances of confusing corporate paternity and the question of knowledge in light of Title 57–3–3, Utah Code Annotated 1953, having to do with the recording act, hardly can we concede that there was no genuine issue of fact to pursue and determine, forever precluding a hearing on the merits. Consequently, we are constrained to and do conclude that as to 2) above, the case between plaintiffs and United Paint, is remanded for trial.

CROCKETT and TUCKETT, JJ., concur.

ELLETT, Justice: (concurring and dissenting).

I agree with the main opinion in affirming the trial court's decision to terminate the contract but cannot agree to reverse its ruling as to the United Paint & Colors Company.

When a person sells land to a corporation in process of being formed, the transaction is not complete until the deed is delivered to the corporation after formation. Our court has passed squarely upon this proposition.

In the case of *Santaquin Mining Company v. High Roller Mining Company*[1] a deed was handed to one of the promoters of the corporation. Thereafter the High Roller Mining Company applied for a patent to a claim which overlapped the Santaquin claim, contending that the deed to an unformed corporation was a nullity. In overruling this contention, this court said:

. . . A paper purporting to be a deed was made, signed, acknowledged, and placed on the public records before the grantee therein named (the plaintiff) had become a corporate entity. The paper was delivered to one W. H. West, with directions to deliver it to the Santaquin Mining Company when it should be incorporated. After the incorporation, W. H. West delivered it, pursuant to directions, to J. A. West, the secretary of the company. It then took effect. It became *eo instanti* a deed, and it then had every requisite required by law. Prior to the instant of delivery it may be conceded that it was a nullity so far as vesting the title to the premises was concerned. But no effect is claimed for it prior to the time of its delivery to the corporation. It will surely be conceded that if, after the incorporation of the plaintiff company, W. H. West, who had possession of the deed, had required the Kirkmans to write another one, sign and acknowledge it, and give it to him, and he had then delivered this new instrument to J. A. West for the company, that it would have been a valid deed. And will it not be as readily conceded that, if one who has agreed to convey certain land to a corporation to be formed should, before its actual existence, write, sign, and acknowledge a paper in form a deed, designating as grantee the name under which the corporation afterwards receives its charter or certificate, that when the company should finally become a corporate entity, he might deliver this paper to it, and thereby vest in it a good title from the moment of delivery? Is not the delivery the very essence of the transaction? Would it not be demanding a perfectly

1. 25 Utah 282, 71 P. 77 (1903). Also see *Beggs et al. v. Myton Canal § Irrigation Co. et al.,* 54 Utah 120, 179 P. 984 (1919).

useless ceremony to require the owner of the premises to write, sign, and acknowledge another instrument to the same purport? Clearly, such a proceeding would savor strongly of the nonsensical. . . .

The deed to Utah Valley Land & Development *Corporation* was intended to be given to the corporation being formed. The certificate of incorporation of that very entity was in the name of Utah Valley Land & Development *Company*, and as soon as the corporation was formed, the deed was given to its officers by the promoter, who had possession of it. Within 20 days after the deed was signed, the corporation was in existence.

If the corporation had never been formed, the seller could not keep the land after being paid for it. The equitable interest would not belong to her, even though the legal title might remain in her name. However, the corporation was formed, and the deed was delivered to it, and at that time the legal title passed to it. The name of the grantee in the deed and that of the corporation formed are so closely related as to be idem sonans.

If the purchaser of the land is named John Doe, he takes the land even when the name of the grantee is Jack Doe. It is the entity which takes the land, and that is not affected by a slight difference in the spelling of the name in the deed. The case of *Sumter Tobacco Warehouse Co. v. Phoenix Ins. Co., Limited, of London*[2] is in point. There a deed was made to Sumter Tobacco & Cotton Warehouse Company a few days before a charter was obtained by the grantee corporation. When the certificate of incorporation was made, it omitted "& Cotton" from the name as it appeared in the deed. Plaintiff's warehouse was destroyed by fire, and the insurance company attempted to avoid payment upon the grounds (among others) that the deed was a nullity because issued before incorporation of the grantee, and also because the name of the grantee was not the same in the deed as it was on the articles of incorporation. The South Carolina Court stated that "A deed to a corporation made before the charter will have effect as soon as the charter is obtained, on the ground that its acceptance should be presumed as soon as the corporation is competent to accept it." The court made the observation that "it is the duty of the courts to give effect to deeds made in good faith rather than destroy them on technical grounds." The court further stated that the slight change in the name of the corporation could make no difference. "To hold that the slight change in the name of the corporation should defeat the deed would be to refuse to regard the intention of all parties concerned for the sake of an attenuated technicality."

Fletcher Cyc. Corp. (Perm. Ed.), Vol. 8, Section 3956, pages 278 and 279, states:

A person who conveys real property to an association as a corporation cannot avoid the conveyance by denying the corporate existence of the grantee, and this estoppel also extends to persons who are in privity with the grantor, as is seen in another section.

It then goes on to say in Section 3989:

The estoppel of a person dealing with a pretended corporation to deny its legal incorporation also operates against persons who stand in his shoes, or, in other words, who are in privity with him. Thus, it clearly operates as against his executor or administrator, or his heirs, and against one . . . to whom he conveys property which he has previously conveyed to a corporation . . .

While plaintiffs filed an affidavit that they were not aware of the deed to the Utah Valley *Corporation,* that can make no difference, since Utah Valley Land & Development Company had been in possession since 1962 and the deed was of record, as set out in the main opinion, since October 20, 1961. Furthermore, when Mr. Bagnall

2. 76 S.Ct. 76, 56 S.E. 654 (1907).

was questioned about the consideration which he had paid for the deed, he stated that he had forgiven the grantors of any obligations which they had under the contract.

I would affirm the trial court's order in this matter also.

MAUGHAN, J., concurs in the views expressed in the concurring and dissenting opinion of ELLETT, J.