**J. R. BAGNALL, aka Joseph R. Bagnall, and Florence Bagnall, Plaintiffs and Respondents,**

v.

**SUBURBIA LAND COMPANY, an Idaho Corporation, Reed R. Maxfield, Mildred S. Maxfield, Jean B. Nyberg Shirk, Darwin Nyberg, Glenna Nyberg, Suburbia Land Company, a Utah Corporation, Roger E. Maxfield, Suburbia Land Company, a Nevada Corporation, Lavera Maxfield, Lester Romero, Sanpete Land & Livestock Company, a Utah Corporation, Utah Valley Land & Development Company and United Paint & Colors Company, Defendants and Appellants.**

No. 14899.

Supreme Court of Utah.

May 4, 1978.

See also, Utah, 579 P.2d 917.

---

Ronald C. Barker, Salt Lake City, Richard L. Maxfield, Provo, Paul R. Frischknecht, Manti, for defendants and appellants.

Jackson Howard of Howard, Lewis & Peterson, Provo, for plaintiffs and respondents.

HALL, Justice:

Appeal from a quiet title judgment in favor of plaintiffs (hereinafter "Bagnalls") and against defendant United Paint & Colors Company (hereinafter "United Paint").

This case was previously before us on appeal[1] from a judgment terminating a real estate contract and quieting title to some 540 acres in favor of Bagnalls, less

---

1. *Bagnall v. Suburbia Land Company,* Utah, 542 P.2d 183 (1975).

140.15 acres the title to which was quieted in United Paint by way of summary judgment. We affirmed the judgment except for the issue of ownership in the 140.15 acre tract and, since substantial issues of fact appeared to exist pertaining thereto, we remanded that issue for trial on the merits.

The voluminous record presently before us reveals a chronology of events as follows: Plaintiff J. R. Bagnall and his sister, defendant Jean B. Nyberg (now Jean B. Nyberg Shirk, hereinafter "Jean") were joint owners of the said 140.15 acre tract situated in Sanpete County, Utah. On September 1, 1952, J. R. Bagnall and his mother entered into a written agreement to sell several tracts of land, including the 140.15 acre tract, to Jean and others. Jean pledged her interest in the 140.15 acre tract as security for payment and in the event of default, her interest therein was to revert to the sellers. Thereafter, prior to September, 1961, Jean acquired the interests of the other buyers in the contract and on September 8, 1961, executed an earnest money agreement to sell her interest in the aforesaid contract to Bar 20 Corporation. Later on in 1961, at the request of one Virgil Redmond, she executed and delivered to him a quitclaim deed describing all of the lands set forth in the contract, naming Bar 20 Corporation as grantee. Bar 20 Corporation was a non-entity and never became incorporated at any time thereafter. Again at the request of Virgil Redmond, on or about March 3, 1962, Jean executed a special warranty deed in favor of Utah Valley Land & Development Corporation (hereinafter "Utah Valley"), describing therein various lands, including the 140.15 acres in question. Although Utah Valley was then also a non-entity it was thereafter incorporated on March 23, 1962.

On or about July 16, 1962, one Reed R. Maxfield represented to Bagnalls that he had acquired all of the interests of the buyers in the 1952 contract in the name of defendant Suburbia Land Company (herein-

after "Suburbia"). Relying thereon, Bagnalls entered into a modification of the contract with Suburbia and when the contract became in default the present lawsuit was filed on November 5, 1970, to terminate the contract and quiet title.

On May 20, 1971, in consideration for a release of all liability under the 1952 contract, Jean executed a quitclaim deed to Bagnalls describing therein various tracts of land, including the subject 140.15 acres, and the deed was recorded May 28, 1971.

Bagnalls caused a lis pendens to be recorded in the office of the Sanpete County Recorder on August 24, 1971, and thereafter, on October 4, 1971, Utah Valley, by its President, Virgil Redmond, executed and delivered a deed to United Paint & Color [2] Company (herein United Paint) for various lands, including the 140.15 acres in question. Utah Valley had been previously suspended by the Utah Secretary of State for failure to pay taxes and no showing was made that the deed was executed as part of the winding up of its affairs. The deed was recorded on October 20, 1971, immediately after the 9-year old deed of Utah Valley was also recorded. Thereafter, on November 3, 1971, Bagnalls sought and obtained court approval to join Utah Valley as a party defendant and similarly joined United Paint as a party defendant on August 9, 1973. Prior to the first trial which began on April 22, 1974, judgment was entered by default against several of the named defendants, including Utah Valley. Also, the summary judgment hereinabove referred to was entered in favor of United Paint. At the conclusion of the trial, the court entered judgment in favor of Bagnalls and it, together with the summary judgment in favor of United Paint, were the subjects of the prior appeal.[3] The remand of this Court occasioned the second trial on the issue of ownership of the 140.15 acre tract as between Bagnalls and United Paint.

The second trial began on April 22, 1976, and from the evidence adduced the judge

---

2. The deed apparently misspelled United Paint's name. Its true name appears to be United Paint & Colors Company.

3. Supra, footnote 1.

determined that Bagnalls were entitled to a decree quieting title against United Paint and from that judgment United Paint appeals.

United Paint asserts the trial court erred in several respects, all of which generally fall into two categories: (1) that the evidence is insufficient to support the judgment; and (2) that the judge erred in taking judicial knowledge of proceedings in the first trial in which United Paint did not participate.

Perhaps the most basic principle of appellate review is that we must view the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to sustaining the trial court's decision.[4] Considering the evidence in that light, we are convinced that the trial court properly quieted title in Bagnalls.

The trial court made the factual determination that Bagnalls did act in good faith and gave valuable consideration and the evidence supports such a conclusion. Although the Maxfields possessed the property since 1963, they represented that *Suburbia* had the rights in the property not *United Paint.* The trial court specifically found that although Bagnalls had notice of a claim of Redmond and others, they had no notice of United Paint's claim. Furthermore, the trial court found that the release of Jean's liability under the 1952 contract was sufficient consideration for the 1971 quitclaim deed naming Bagnalls as grantees.

The contentions of United Paint are without merit and we need not address them further simply because there are significant *undisputed* facts in the record of the second trial which are dispositive of this appeal.

The first such fact to be noted is that Utah Valley was suspended from doing business as a corporation at the time it caused a deed to be executed in favor of United Paint, and since no showing was made that it was engaged in winding up its affairs, the legal conclusion to be drawn therefrom is that the deed was executed without corporate authority and hence was a nullity.[5]

A second undisputed fact is that a lis pendens[6] was recorded which was, in effect, a republication of the pleadings[7] in the pending quiet title action and put United Paint, and all others, on notice thereof.

■ The doctrine of lis pendens preserves the status quo by keeping the subject of the lawsuit within the power and control of the court until judgment or decree shall be entered.[8] The recording of a lis pendens serves as a warning to all persons that any rights or interests they may acquire in the interim are subject to the judgment or decree.[9] One who acquires an interest in land that is the subject of pending litigation stands in no better position than the person he acquires it from, he is charged with notice of the claimed contrary rights of others, and he is bound by the judgment rendered in the litigation.[10]

In the instant case, the recording of the lis pendens on August 24, 1971, put United Paint on notice of the pending litigation as it affected the land in question. Consequently, whatever interest was conveyed by the deed of October 5, 1971, from Utah Valley to United Paint was clearly subject to the final judgment.

■ The final undisputed fact is that the default judgment entered against Utah Valley (thereby quieting title in Bagnalls as against it) was previously affirmed on appeal to this Court.[11] This event, coupled

4. *Oberhansly v. Earle,* Utah, 572 P.2d 1384 (1977).

5. See U.C.A., 1953, 16–10–101, providing for winding up of affairs.

6. The common law doctrine is incorporated into U.C.A., 1953, 78–40–2.

7. *Hansen v. Kohler,* Utah, 550 P.2d 186 (1976).

8. *Dupee v. Loan & Trust Co.,* 20 Utah 103, 57 P. 845 (1899).

9. 54 C.J.S. Lis Pendens § 37.

10. 51 Am.Jur.2d, Lis Pendens, Sec. 1.

11. Note 1, supra.

with the fact that a lis pendens was recorded, serves to conclusively defeat any interest United Paint may have acquired through Utah Valley. This is the case by reason of the doctrine of lis pendens which requires United Paint to stand in the same position of its grantor, Utah Valley. Consequently, when the interests of Utah Valley in the 140.15 acres were defeated, so were those of United Paint.

Affirmed. Costs to Bagnalls.

ELLETT, C. J., and CROCKETT, MAUGHAN and WILKINS, JJ., concur.