J. Reed TUFT, general partner, Tuft & Company, a Utah limited partnership, Plaintiff and Respondent,

v.

FEDERAL LEASING, a Utah corporation, Wendell L. Butcher and Irene B. Butcher, his wife, and Bayshore Inn, a California corporation, Defendants and Appellants.

No. 17392.

Supreme Court of Utah.

Dec. 14, 1982.

Ronald C. Barker, Salt Lake City, for defendants and appellants.

Dwight L. King, Salt Lake City, for plaintiff and respondent.

HALL, Chief Justice:

Defendants Federal Leasing and Bayshore Inn appeal the trial court's judgment quieting title in plaintiff J. Reed Tuft to a parcel of real property.

On March 27, 1964, defendants Wendell and Irene Butcher mortgaged a parcel of land to plaintiff's predecessor in title, Strevell-Paterson Finance Corporation (Strevell), to secure a promissory note. This note became delinquent on March 31, 1966. On November 2 of that year, the Butchers conveyed the parcel to Carnicero Dynasty Corporation (Carnicero) by warranty deed. Carnicero did not assume or agree to pay the Butchers' mortgage on the property.

On March 8, 1967, Strevell filed an action to foreclose the Butchers' mortgage. Strevell also filed a lis pendens with the Salt Lake County Recorder's office at that time. The lis pendens covered, in addition to the parcel described in the Butchers' mortgage document, a right-of-way over neighboring land owned by the Butchers which provided access to the parcel.

During the pendency of the foreclosure action, property taxes became delinquent on both the mortgaged parcel and the parcel over which Strevell claimed a right-of-way. At a tax sale on May 20, 1970, Carnicero purchased the former and the Butchers purchased the latter parcel. On July 1, 1970, both Carnicero and the Butchers conveyed their parcels to defendant Bayshore Inn. Bayshore Inn subsequently deeded both parcels to defendant Federal Leasing.

On June 12, 1973, a summary judgment was entered in favor of Strevell in the foreclosure suit. Strevell received the mortgaged property and the right-of-way by means of a sheriff's deed dated April 22, 1974. Strevell subsequently conveyed its interest in the property to American Acceptance Corporation, from which it passed to plaintiff's corporation, Tuft & Company.

On September 11, 1978, plaintiff filed this suit to quiet title as against Federal Leasing, Wendell Butcher and Irene Butcher. Bayshore Inn was joined as a party defendant shortly thereafter.

Defendants raise a myriad of subpoints on appeal, which range from insufficiency of the evidence to fraud upon the court. However, defendants' central contention is that the trial court should not have quieted title in plaintiff because of the fact that Strevell did not name as a party in its foreclosure action Carnicero, the record titleholder of the mortgaged property at the time that action was filed. According to defendants, Carnicero could not be bound by the results of the foreclosure action because it was not included as a party defendant in that action. Carnicero has not asserted this claim, nor is Carnicero a party to the present action. However, defendants Federal Leasing and Bayshore Inn claim the right, as Carnicero's successors in title, to assert on Carnicero's behalf this objection to the prior foreclosure proceedings.

Defendants advance a denial of due process argument premised upon the contention that inasmuch as Carnicero was not a party defendant in the foreclosure suit it did not achieve the status of a "judgment debtor" within the contemplation of Rule 69(f)(1), Utah Rules of Civil Procedure, and therefore was deprived of the right to redeem the property from the sheriff's sale. We do not subscribe to defendants' interpretation of the Rule which reads in pertinent part as follows:

(1) Who may redeem. Property sold subject to redemption ... may be redeemed by the following persons *or their successors in interest:* (1) the judgment debtor .... [Emphasis added.]

It is thus to be seen that defendants' interpretation of the Rule completely ignores the plain language thereof that permits the *successor in interest* of the judgment debtor to redeem.

In the instant case, the Butchers, as mortgagors, were joined as parties defend-

ant in the foreclosure sale and they ultimately became judgment debtors. Carnicero and the defendants Bayshore Inn and Federal Leasing are the undisputed successors in interest of the Butchers, and as such, the Rule affords them the right to redeem. They made no effort, nor were they denied the right, either to pay the indebtedness against the property and avoid the foreclosure, or to redeem after the sheriff's sale.

Although Carnicero was not joined as a party defendant in the foreclosure suit, under the facts and circumstances of this case to equate the claims of Bayshore Inn and Federal Leasing to the property with that of Carnicero, their predecessor in title who did not take subject to the lis pendens, would defeat the entire purpose of the lis pendens rule.

█ Federal Leasing and Bayshore Inn each received their interests in the subject property after March 9, 1967, the date when Strevell filed its lis pendens giving notice of that action. Accordingly, under well-settled principles of law, Federal Leasing and Bayshore Inn acquired the property subject to whatever judgment later might be rendered in that action.

█ A person who purchases property while it is under litigation does so at his peril.[1] This Court recently stated:

> The doctrine of lis pendens preserves the status quo by keeping the subject of the lawsuit within the power and control of the court until judgment or decree shall be entered. *The recording of a lis pendens serves as a warning to all persons that any rights or interests they may acquire in the interim are subject to the judgment or decree.*[2] [Emphasis added.]

In an earlier case, this Court explained:

> The mischief that would follow if the parties to an action under such circumstances could alienate away property which is before the court for determination is obvious.[3]

Accordingly, we have recognized the doctrine of lis pendens in a number of recent cases.[4]

In the present case, the lis pendens document gave constructive notice to both Bayshore Inn and Federal Leasing of the pendency of the foreclosure suit. Both parties, in acquiring the property, were therefore charged with the knowledge that their rights with respect to the property would be determined by that suit.

In addition to the constructive notice given by the lis pendens, Federal Leasing and Bayshore Inn appear to have had actual notice of the pendency of the foreclosure suit. Wendell Butcher, one of the original mortgagors of the property, was one of seven or eight incorporators of Bayshore Inn and held at least eight percent of the stock of that corporation. Butcher served as president of Bayshore Inn for two or more separate periods during the pendency of the foreclosure action. During the periods when he did not serve as president, he remained in contact with the directors of the corporation and was kept informed of the activities which transpired at all directors' meetings. By his own admission, Butcher represented Bayshore Inn in the transfer of the property from Carnicero to Bayshore Inn. When Bayshore Inn subsequently sold the property to Federal Leasing, Butcher signed the warranty deed as president of Bayshore Inn and his wife signed as secretary.

█ Wendell Butcher also held stock in Federal Leasing, and he and his wife each served as president of that corporation as

---

1. *Hidden Meadows Development Co. v. Mills,* Utah, 590 P.2d 1244 (1979).

2. *Bagnall v. Suburbia Land Co.,* Utah, 579 P.2d 914 (1978).

3. *Glynn v. Dubin,* 13 Utah 2d 163, 369 P.2d 930 (1962).

4. *Bastian v. Cedar Hills Investment & Land Co.,* Utah, 632 P.2d 818 (1981); *Boyce v. Boyce,* Utah, 609 P.2d 928 (1980); *Hidden Meadows Development Co. v. Mills, supra,* n. 1; *Bagnall v. Suburbia Land Co., supra,* n. 2; *Hansen v. Kohler,* Utah, 550 P.2d 186 (1976); *Harvey v. Sanders,* Utah, 534 P.2d 905 (1975).

well. In addition, Butcher did consulting and other work for Federal Leasing. In light of the active involvement of the Butchers as stockholders and officers in both corporations, the Butchers' knowledge concerning the foreclosure suit may fairly be imputed to the corporations themselves.[5] This actual knowledge concerning the pendency of litigation involving the property acquired by Bayshore Inn and Federal Leasing subjects them to the results of that litigation in the same way that the constructive knowledge imparted by the lis pendens does.[6]

Because Bayshore Inn and Federal Leasing had both actual and constructive notice of the pendency of the foreclosure suit at the time they acquired their successive interests in the property, they are bound by the results of that suit. The trial court properly quieted title in plaintiff on that basis.

■ Defendants also assert that their tax title is a new and paramount title which totally destroys the prior title of plaintiff. This familiar rule of law was recognized by this Court in *Hanson v. Burris*,[7] wherein it was stated as follows:

> When the period of redemption has expired and the county has received a tax deed for any real estate sold for delinquent taxes, the county tax lien merges into the title as effectively as by execution sale with such further rights of redemption as the statute provides. Purchasers from the county then take with a "new and complete title in the land, under an independent grant from the sovereign authority, which bars or extinguishes all prior titles and incumbrances of private persons, and all equities arising out of them." [Citations omitted.]

86 Utah at 438–39, 46 P.2d 400.

However, the foregoing rule has no application to the facts of this case. As was also stated by the Court in *Hanson, supra:*

> [A] *purchaser (not a redemptioner)* from the county takes title from the county free and clear of all claims up to the time title is transferred from the county to the purchaser. This concession eliminates much from the discussion. [Emphasis added.]

86 Utah at 433, 46 P.2d 400.

The law is as stated by the Court in *Hadlock v. Benjamin Drainage District:*[8]

> That one who is under a duty to pay taxes cannot add to or strengthen his title by purchasing the land at tax sale is established as settled law. [Citations omitted.]

89 Utah at 96, 53 P.2d 1156.

In the instant case, we need look at the substance of the transaction rather than its form. The so-called purchase at tax sale by defendants' predecessors in interest (Carnicero and the Butchers) constituted nothing more than payment of the taxes, or a redemption by the owners. As a necessary consequence, plaintiff's interest in the property was not defeated by the tax sale.

As to defendants' remaining contentions, after due consideration, we find them to be without merit.

Affirmed. Costs to plaintiff.

STEWART, OAKS, HOWE and DURHAM, JJ., concur.

---

5. Carnicero similarly appears to have had actual notice of the foreclosure suit at the time when it acquired the property. The record shows that the Butchers' daughter and son-in-law held the positions of secretary and president, respectively, of Carnicero on the date when the Butchers transferred the mortgaged property to that corporation. Furthermore, Wendell Butcher himself worked as Carnicero's property manager "off and on for a period of three, four years" during which the transfer took place.

6. *Hidden Meadows Development Co. v. Mills, supra,* n. 1; *Harvey v. Sanders, supra,* n. 4; *Glynn v. Dubin, supra,* n. 3; *Federal Land Bank of Berkeley v. Pace,* 87 Utah 156, 48 P.2d 480 (1935).

7. 86 Utah 424, 46 P.2d 400 (1935).

8. 89 Utah 94, 53 P.2d 1156 (1936).