William D. BLODGETT and Florence G. Blodgett, his wife, Plaintiffs and Respondents,

v.

ZIONS FIRST NATIONAL BANK, Stanley L. Pace and Allan D. McComb, individually and dba Alco Investment, and Does 1-10, Defendants and Appellants.

William D. BLODGETT and Florence G. Blodgett, his wife, Plaintiffs and Respondents,

v.

Joe MARTSCH, Betty Purcell, aka Betty Purcell Martsch, Doyle Nease, Raco Car Wash Systems, Inc., a Utah corporation, Wayne A. Ashworth, trustee, Carl W. Tenney, Valley Bank Trust Company, and First Security Bank of Idaho, N.A., Defendants and Appellants.

William D. BLODGETT and Florence G. Blodgett, Plaintiffs and Respondents,

v.

Betty PURCELL aka Betty Purcell, Martsch and Water Park Corporation, a Utah corporation, Defendants and Appellants.

Nos. 860178-CA, 860372-CA.

Court of Appeals of Utah.

April 11, 1988.

---

Walter P. Faber, Jr., Salt Lake City, for defendants and appellants, Pace and McComb.

Robert M. Dyer, Lester A. Perry, James J. Cassity, M. Karlynn Hinman (argued), Salt Lake City, for plaintiffs and respondents, Blodgett.

James A. Arrowsmith, Salt Lake City, for defendant and appellant, Betty Purcell.

Before BILLINGS, JACKSON and BENCH, JJ.

## OPINION

BILLINGS, Judge:

Because of common issues of fact and law, the cases before us were consolidated for purposes of appeal. The litigation underlying the appeals commenced in 1974 and centers around the ownership of certain real property. Its complexity and duration stem, to a considerable extent, from conflicting court orders and subsequent modifications thereto. The history of this controversy will be set out only to the extent warranted in resolving the issues before us.

In the early 1970's, the Blodgetts agreed to pledge one of two tracts of their property as security for a loan to Raco Car Wash Systems, of which Betty Purcell was president. The Blodgetts, however, mistakenly pledged the two tracts of land as security. When Raco defaulted on the loan, the lend-

ing institution foreclosed on *both* tracts of land.

Extensive litigation followed the foreclosure, which we will refer to collectively as *Blodgett I.* On November 4, 1974, the Blodgetts recorded a lis pendens on the property as a result of their claims in *Blodgett I.* After trial, and an appeal to the Supreme Court with a remand to the district court, the Blodgetts, Purcell, and the other parties involved in the litigation stipulated in court that Purcell would, among other things, convey any interest she had in the property to the Blodgetts. The oral stipulation provided in pertinent part:

Mr. Rust [attorney for the Blodgetts]: Yes, we represent the [Blodgetts], and we accept the offers making a total cash settlement of $20,000.00 plus the releases as mentioned here.

. . . .

Mr. Bushnell [attorney for the Blodgetts]: We'll get the quit-claims we want signed, you get the releases and satisfactions you want signed. Why don't you prepare the release you want for the bank and get the check and we'll go from there. Will that be all right?

The Court: A dismissal with prejudice of the action.

Mr. Bushnell: We'll prepare the dismissal.

Mr. Barker [attorney for Purcell]: If you want quit-claim deeds, we are going to mail them to Idaho and get them back. That is a few days mail time.

Mr. Bushnell: Let[']s get all of it done plus that—well—

Mr. Barker: If you can do it by the Court Order and quiet title to the matter—

Pursuant to the stipulated settlement, Purcell executed a quit-claim deed and delivered it to the Blodgetts on January 15, 1980. Unfortunately, in reducing the stipulated settlement to writing, the Blodgetts failed to specifically quiet title in themselves. This order, entered May 5, 1980, provided in relevant part:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that to the extent judgment has not heretofore been entered, the Complaint of plaintiffs against defendants Betty Purcell Martsch, Raco Car Wash Systems, Inc., and Water Park Corporation is hereby dismissed with prejudice and any and all counterclaims of said defendants are hereby dismissed with prejudice, and each party to bear its own costs.

 While *Blodgett I* was pending, a companion case was commenced, which concerned judgment liens based upon a promissory note, which we will refer to as *Zions I.* On July 7, 1971, Lorin Pace and Betty Purcell, as co-makers, executed a promissory note with a face value of $27,-262.59 to Zions First National Bank. Pace and Purcell subsequently defaulted. Consequently, on January 16, 1976, Zions initiated suit against Pace and Purcell seeking the principal amount of the note, plus interest, attorney fees, and costs. On March 3, 1976, a default judgment was entered against Pace. Over three years later, on June 1, 1979, a final default judgment was entered against Purcell. These judgments were renewed on March 14, 1984. On August 31, 1984, Zions assigned any interest it had in the judgments to Alco Investment, Inc., a dba comprised of Stanley L. Pace (Lorin Pace's son) and Allan D. McComb.[1]

---

1. Exactly how this "assignment" was accomplished is a matter of dispute. In their brief on appeal, the Blodgetts claim that Lorin Pace satisfied the promissory note, which served as the basis for the judgment liens, *before* the judgment liens were assigned by Zions to Alco. If Pace did in fact satisfy the judgment liens, the satisfaction would have barred Alco from enforcing the judgments because Zions, as judgment creditor, can only receive one satisfaction of a debt. *See Harris–Dudley Plumbing Co. v. Professional United World Travel Ass'n, Inc.,* 592 P.2d 586, 588 (Utah 1979). Consequently, once Zions had been paid, Zions had nothing to "as-

sign" to Alco. Since Alco would have received nothing by Zions' "assignment," it would have had no legal basis to foreclose on property in which it believed Purcell had an interest.

Proof of this satisfaction, however, was not admitted before the lower court. Nonetheless, the Blodgetts attached to their brief on appeal a letter from Zions' attorney indicating that Lorin Pace did in fact satisfy the judgment in full on the same date the assignment was accomplished. We note, however, merely attaching a document to an appellate brief does not make the document part of the record. *See Watkins v. Simonds,* 14 Utah 2d 406, 407, 385 P.2d 154,

To enforce the judgment against Purcell, Alco sought to foreclose on certain real property in which it believed Purcell had an ownership interest but which the Blodgetts claimed they owned outright. Alco believed Purcell had an interest in the subject property because the May 5, 1980 order in *Blodgett I* did not, on its face, quiet title in anyone.

Cognizant of the possible ambiguity in the May 5, 1980 order, the Blodgetts filed several motions in *Blodgett I*, seeking to correct the prior order. Initially, the Blodgetts filed a Rule 60(b) motion to amend the May 5, 1980 order. Utah R.Civ.P. 60(b). The court granted the Blodgetts' motion and, accordingly, entered an Order of Judgment of Quiet Title pursuant to Rule 60(b) on May 13, 1986. An amendment to that order was entered on August 13, 1986.

Purcell filed a motion to set aside the amended order, arguing that she was not given notice of the motion, and that the motion was not filed within the mandatory three months or a reasonable time after the final order was entered. Consequently, the Blodgetts then filed a motion to correct the original May 5, 1980 order under Rule 60(a) claiming clerical error. Utah R.Civ.P. 60(a). On September 26, 1986, the trial court granted the Blodgetts' motion and signed an order quieting title in Blodgetts pursuant to Rule 60(a). Purcell and Alco challenge this modified order in the related cases before us today.

## BLODGETT I

### STANDING

■ On appeal the Blodgetts, as respondents, contend that Purcell lacks standing to object to the trial court's September 26, 1986 order and judgment in *Blodgett I* because she previously quit-claimed any interest she had in the property. While the issue of standing was not raised at trial, either party, or even the court on its own motion, may properly raise standing for the

first time on appeal. *See Terracor v. Utah Bd. of State Lands*, 716 P.2d 796, 798 (Utah 1986); *Utah Restaurant Ass'n v. Davis County Bd. of Health*, 709 P.2d 1159, 1160 (Utah 1985); *Health Tecna Corp. v. Sound Sys. Int'l, Inc.*, 588 P.2d 169, 170 (Utah 1978).

The Utah Supreme Court has established three tests to determine whether a litigant has standing. *Terracor*, 716 P.2d at 799; *Jenkins v. Swan*, 675 P.2d 1145, 1150 (Utah 1983). First, the litigant can show that he has suffered some distinct and palpable injury that gives him a personal stake in the outcome of the legal dispute. Second, the litigant may have standing if no one else has a greater interest in the outcome of the case and the issues are unlikely to be raised otherwise. Even if he is unable to meet the first two tests, under the third test, a litigant may nonetheless have standing if the issues are unique and of such great public importance that they ought to be decided in the furtherance of the public interest. *Terracor*, 716 P.2d at 799; *see also Kennecott Corp. v. Salt Lake County*, 702 P.2d 451, 454 (Utah 1985); *Jenkins v. Swan*, 675 P.2d at 1148–50.

■ Purcell fails to satisfy any of the three tests. She has not alleged a particularized injury by virtue of the amendment of the final judgment under Rule 60(a). Purcell previously quit-claimed any interest she may have had in the land, which is the subject of the amended judgment to the Blodgetts. She thus suffers no injury by the court's subsequent order quieting title in the land to the Blodgetts. Purcell does not come before this court claiming an interest in the land nor does she dispute the validity of her quit-claim deed. Rather, she contends only that the trial court's amendment of the final order in *Blodgett I* exceeds the bounds of the court's statutory authority. Purcell fails to articulate a substantial or a legally protected interest in the subject matter of the litigation. Consequently, she lacks standing under the first

155 (1963) (facts asserted in briefs, even if true, but not contained in the official record will not be considered on appeal).

test. *See Main Parking Mall v. Salt Lake City Corp.*, 531 P.2d 866, 867 (Utah 1975).

The second test offers Purcell no further assistance. Under the second test, we must determine whether any one else has a greater interest in challenging the propriety of the Rule 60(a) amendment in *Blodgett I*. While in most instances there is no one in a stronger position to raise the issue of the correctness of a trial court's amendment of a final order than the original parties to the suit, this case presents a factual anomaly. There is a class of litigants better suited to bring the action, namely the judgment creditors who may be affected by the amended order.

Alco, as assignee of a judgment lien, is before this court in the companion case, *Zions I*, challenging the order. Alco seeks to foreclose on Purcell's interest, if any, in the land in question. Alco claims it would suffer a distinct and palpable injury because the amended order quieting title in the Blodgetts would cut off its judgment lien filed subsequent to the Blodgetts' lis pendens. As Alco has a greater interest in the outcome of the case, Purcell does not meet the second test. Purcell likewise fails the third test as this case is not one of great public interest or importance.

Our conclusion that Purcell does not have standing is buttressed by the Utah Supreme Court's decision in *Terracor*. In *Terracor*, the plaintiff claimed that the Utah Land Board violated state law and its fiduciary duty to the state by leasing land to a third party. The court found that plaintiff did not have an interest in the property, and thus suffered no personal injury, and that there were other potential plaintiffs with a more direct interest in the issues of the case. *Terracor*, 716 P.2d at 800. The same is true in this case. Purcell has no interest in the property and thus will suffer no personal injury regardless of the correctness of the trial court's amendment of the final order, and there are other litigants better suited to challenge the trial court's action.

## ZIONS I

A myriad of points are raised on appeal in *Zions I*, the dispute between Alco, Zions'

assignee of the default judgment liens, and the Blodgetts. In considering Alco's appeal, we note that the issue came before the trial court on cross motions for summary judgment. The trial court granted the Blodgetts' motion and denied Alco's. Therefore, we review the facts and inferences in the light most favorable to Alco, the party against whom summary judgment was granted. *Payne by and Through Payne v. Myers*, 743 P.2d 186, 188 (Utah 1987); *Atlas v. Clovis Nat'l Bank*, 737 P.2d 225, 229 (Utah 1987); *In re K.O. v. Denison*, 748 P.2d 588, 590 (Ct.App. 1988). Based on this standard, if we determine that there is a genuine issue of material fact, we will reverse the trial court's determination and remand to the trial court on that issue. *Atlas*, 737 P.2d at 225; *Denison*, at 590.

## ALCO'S NAME REGISTRATION

■ First, we resolve a preliminary matter. The Blodgetts argue that this court does not have the authority to hear this case because Alco's name registration expired September 22, 1984, *before* Alco initiated foreclosure proceedings on the property. In order to avoid this problem, the individuals who comprised Alco, Stanley Pace and Allan McComb, subsequently assigned Zions' judgments to themselves, in their own names, as tenants in common.

We acknowledge that Utah Code Ann. § 42-2-10 (1981) mandates that any persons who conduct business under an assumed name cannot sue, prosecute, or maintain any action in any of the courts unless they comply with the name registration statutes. After reviewing the facts, however, we are persuaded that this statute does not govern this case. We concede that Alco failed to comply with the assumed name statute when its name registration expired. Utah Code Ann. § 42-2-5 (1981). However, the only sanction for this non-compliance with the assumed name statute is denying *Alco* access to the courts. *See Wall Inv. Co. v. Garden State Distributing*, 593 P.2d 542, 544 (Utah 1979). We note that in this case Alco is

*not* the plaintiff or a counter claimant. Rather, Alco is the defendant. Furthermore, and more importantly, the individuals who comprised Alco were, in addition to Alco, named in their individual capacities as party defendants. Subsequent to Alco's name expiration, Alco assigned Zions' judgments to the individuals comprising it, namely Stanley Pace and Allan McComb. Therefore, any consequence from the lapse of Alco's name expiration is now moot. In conclusion, we find that the lapse of Alco's name registration does not preclude us from hearing this appeal.

## LIS PENDENS

The second issue we address is whether the trial court was correct in concluding, as a matter of law, that the judgment liens Alco may have acquired from Zions were of no effect against the Blodgetts' property, thus quieting title in the Blodgetts.

■ Under the doctrine of lis pendens, the filing of a lis pendens serves as constructive notice to all persons that the rights and interests in the subject property are in dispute. Anyone taking an interest in that property does so at his or her own peril. *See Hidden Meadows Dev. Co. v. Mills,* 590 P.2d 1244, 1248 (Utah 1979); *Bagnall v. Suburbia Land Co.,* 579 P.2d 914, 916 (Utah 1978). Persons who acquire interests in property that is subject to a lis pendens are bound by the *results* of the pending litigation. *Tuft v. Federal Leasing,* 657 P.2d 1300, 1303 (Utah 1982); *see Hidden Meadows,* 590 P.2d at 1248; *Bagnall,* 579 P.2d at 916; *Harvey v. Sanders,* 534 P.2d 905, 907 (Utah 1975).

■ Alco contends that since the "final" May 5, 1980 order did not specifically state that title was quieted in the Blodgetts, the lis pendens was ineffective in defeating Alco's rights as an assignee of judgment liens which attached after the lis pendens. Alco reads the doctrine of lis pendens too narrowly. Alco, as Zions' assignee, takes subject to the *results* of the litigation of *Blodgett I,* provided that result, which can include a settlement agreement of the parties, was not reached by fraud or collusion. *See Milton E. Giles & Co. v. Bank of Am.*

*Nat'l Trust & Savings Ass'n,* 47 Cal.App. 2d 315, 117 P.2d 943 (1941); *Tuft,* 657 P.2d at 1303 (parties with actual and constructive notice of the foreclosure suit are bound by the results of that suit); *Hidden Meadows,* 590 P.2d at 1248 ("[o]ne who takes with full knowledge that the property taken is the subject of on-going litigation acquires only the grantor's interest therein, subject to *whatever disposition* the court might make of it") (emphasis added); *Harvey,* 534 P.2d at 907 ("[t]he recording of the notice of lis pendens is deemed to give notice, not only of the fact the action relating to the property it describes is pending, but what that action entails and the *disposition thereof*") (emphasis added). The *result* of *Blodgett I* was that Purcell quitclaimed any interest she had in the property to the Blodgetts. There is no indication the parties reached this settlement agreement in order to defraud creditors. Therefore, applying the foregoing authority, we are persuaded that Alco takes *subject to* Purcell's quit-claim deed. Consequently, Purcell has no interest in the property on which Alco can foreclose.

Our holding obviates the need to address whether the trial court in *Blodgett I* was correct in modifying the May 5, 1980 order pursuant to Rule 60(a) of the Utah Rules of Civil Procedure to quiet title in the Blodgetts. The lis pendens effectively cut off any subsequently filed judgment lien even if the order had not been amended.

Based upon the above, the summary judgment in favor of the Blodgetts is affirmed.

JACKSON and BENCH, JJ., concur.