**M. L. SEARS, Joseph Behling, Frank A. Salimeno, Robert G. Hartmann, and James L. Lavender, on behalf of themselves and all other taxpayers similarly situated, Plaintiffs and Appellants,**

**v.**

**OGDEN CITY, a body politic, Mayor A. Stephen Dirks, Council of Ogden City, and Donna Adams, Ogden City Recorder, Defendants and Respondents.**

**M. L. SEARS et al., Plaintiffs,**

**v.**

**The BOARD OF EDUCATION OF OGDEN CITY, Defendant.**

**No. 14986.**

Supreme Court of Utah.

Dec. 8, 1977.

---

Pete N. Vlahos, Ogden, for plaintiffs and appellants.

Timothy W. Blackburn, Richard W. Campbell, Ogden, for defendants and respondents.

MAUGHAN, Justice:

Plaintiffs appeal from a judgment in favor of defendants concerning the vacation of a street in Ogden, Utah. Plaintiffs are taxpayers, and two are owners of real property in the Argonne Park subdivision. We affirm. Costs to respondents. All statutory references are to U.C.A.1953.

The inception of this conflict was a petition in which the defendant, Board of Education of Ogden, as the sole abutting property owner, along 29th Street between Har-

rison Boulevard and Tyler Avenue, requested vacation of the street by defendant, Ogden City. The street bisects the campus of Ogden High School, and the students to move from one area to the other must cross the street.

The City Council accepted the petition and referred it to the Planning Commission for study. After considering the reports and recommendations from the administrative personnel, the council adopted a proposed ordinance vacating the street. The matter was set for a public hearing, and the council ordered publication of notice of the hearing and the proposed ordinance. Subsequently, a public hearing was held, where the opponents and proponents expressed their views. After consideration of all the issues, the council passed the ordinance vacating the street. The ordinance was thereafter published and became effective April 20, 1976.

The city and board entered into an agreement for the purchase of the vacated street. As consideration, the board undertook to construct a storm sewer along the vacated street; the estimated cost of this work was $36,200. The value of the vacated area was appraised at $13,300. Thereafter, the city conveyed by quit claim deed whatever right, title, or interest it had in the vacated street to the board.

Plaintiffs then filed a complaint against the city seeking a declaration that the ordinance was invalid and enjoining the closing of the street. Thereafter, plaintiffs filed an action against the board seeking similar relief. The two actions were consolidated for trial, and a judgment of no cause for action was rendered against plaintiffs.

The city's interest in the vacated street was derived from three sources. Only the northern third of its width was part of the platted subdivision of Argonne Park, the streets of which were dedicated to the public. Of the remaining width, the western half of the length was platted and dedicated as Corbett's Addition. The eastern half was quit claimed to the city by Ralph E. Hoag Company for perpetual use as a street. Corbett's Addition consisted of the block between 29th and 30th streets, which is completely owned by the board; this addition was vacated in 1904. The Hoag property was not part of a platted subdivision.

The Argonne Park subdivision was dedicated in 1921 and consisted of five blocks. Blocks 1 and 4 were located in the area between 28th and 29th streets, these are owned by the board and are occupied by the northern half of the campus. Blocks 2 and 5 are divided by Kershaw Street and are located in the block east of the school. Block 3 is situated on the west of Polk Avenue. There are sixty-five homes on blocks 2, and 3, and 5. Thus the two plaintiffs who own property in Argonne Park are neither abutting property owners on the vacated street nor are they deprived of access to their property by the vacation.

Plaintiffs challenge the validity of the ordinance on the ground the city did not comply with the notice provisions in Sec. 10–8–8.4, U.C.A.1953, and that the vacation was not in the best interest of the general public.

■ There are certain basic principles to be applied in assessing plaintiffs' claim. The authority to vacate streets, when exercised in the general public interest, is a legislative power vested in municipal corporations.[1]

Section 10–8–8.1, U.C.A.1953, provides:

On petition by a person owning a lot in the city, praying that a street . . . be vacated . . . the governing body of such a city, upon hearing, and upon being satisfied that there is good cause for such . . . vacation . . . that it will not be detrimental to the general interest, and that it should be

1. 11 McQuillin, Municipal Corporations (3rd Ed. Revised) § 30.185, p. 97.

made, may declare by ordinance such street . . . vacated . . . .

When such legislative authority is challenged, the applicable principle is:

Apart from arbitrary action or clear abuse of discretion, or fraud or collusion, or unless there occurs an invasion of property rights, the propriety or necessity of vacating a street, are matters within the discretion of the municipal authorities, which will not be inquired into by the courts. Faithfulness to the public trust reposed in the members of the legislative body will be presumed. . . . [2]

One who will be specially injured, but not others may sue to enjoin the vacation of a street or alley, where unlawful, but not if the proceedings are regular and the remedy at law by an action for damages is adequate. . . . [3]

If the street directly in front of one's property is not vacated but the portion vacated is in another block, so that he may use an intersecting cross street, it is almost universally held that he does not suffer a special injury as entitles him to damages. And this is so notwithstanding the new route is less convenient or the diversion of travel depreciates the value of his property. The inconvenience to the lot owner in having to adopt a less direct route to reach certain points, it has frequently been said, is an injury of the same kind as that suffered by the general public. If means of ingress and egress are not cut off or lessened in the block of the abutting owner, but only rendered less convenient because of being less direct to other points in the city, and made so by the vacation of the street in another block, such consequence is damnum absque injuria. . . . [4]

In a proceeding to set aside a vacation order, a complainant should allege that by reason of closing the street he has suffered special damages different in kind from the damage to the general public. However, a taxpayer is not required to show special damage or injury where the right to relief is grounded on illegal acts of the council claimed to operate as a constructive fraud affecting the city and its citizens.[5]

In applying the foregoing principles to this action, the trial court ruled correctly, for the plaintiffs had no standing to challenge the ordinance. There was no allegation or evidence of fraud or collusion. The city performed a legislative function when they weighed the public benefit of the ordinance. The courts may not delve into the wisdom of a legislative act; it is only where there is no possible benefit to the public that the courts will review such a legislative determination. In *Tuttle v. Sowadzki,*[6] this court stated:

. . . It is elementary, however, that a person cannot object to the vacation of a highway if he has no other interest therein save as one of the public.

. . .

None of the plaintiffs has suffered a special injury different in kind to the public in general, and, therefore, none has standing to challenge the vacation, viz., those whose property does not abut on the street to be vacated or whose access is not substantially impaired have no standing to challenge a procedurally correct vacation.[7]

Plaintiffs' claim of procedural infirmity is predicated on the provision in Sec. 10–8–8.4, requiring publication for four consecutive weeks prior to an action on a petition or

---

**2.** Id. § 30.187, p. 116.

**3.** Id. § 30.200, p. 142.

**4.** Id. § 30.194, pp. 129–130.

**5.** Id. § 30.207, p. 157.

**6.** 41 Utah 501, 514, 126 P. 959, 964 (1912).

**7.** *Banchero v. City Council of the City of Seattle,* 2 Wash.App. 519, 468 P.2d 724 (1970); *Hoskins v. Kirkland,* 7 Wash.App. 957, 503 P.2d 1117 (1972); *Clifford v. City of Cheyenne,* Wyo., 487 P.2d 1325 (1971).

intention to vacate. The notice provisions of section 8.4 are specifically declared inapplicable in the situation set forth in Sec. 10–8–8.3. The latter section states that the notice of the intention of the governing body to vacate is not required, where there is written consent by the owners of the property abutting the part of the street proposed to be vacated.

The plaintiffs, who are owners of property in Argonne Park subdivision, claim the city's quit claim deed to the board was null and void and was an attempt to deprive them of their "reversionary interests" in the vacated street.

■ This court has held that the interest a municipal body acquires in the streets in a platted subdivision is a determinable fee. Upon vacation by the governing authorities, the fee reverts to the abutting property owner.[8] Since the board was the sole abutting property owner along the vacated street, the fee interest would revert thereto without a deed from the city.

Section 10–8–8.5, U.C.A.1953, provides that the action of the governing body vacating a street, which has been dedicated to the public use by the proprietor, shall operate to the extent to which it is vacated as a revocation of the acceptance thereof and the relinquishment of the city's fee therein by the governing body.

Thus the acceptance of dedication of the northern third of the street to the public use by the platting of the Argonne Park Subdivision was revoked by the ordinance. When the board acquired the fee to the land abutting the street, there was a pre-sumption that the conveyance included the fee to the highway center line subject to the public right of way (determinable fee).[9] Upon passage of the ordinance vacating the street, the city no longer had any title or interest in the premises; and, therefore, the city had nothing to sell or convey and the quit claim deed was a nullity as to any interest in the roadway dedicated in the Argonne Park plat.[10] However, these consequences are of no benefit to plaintiffs, since the fee interest reverted to the abutting property owner, the board.

Plaintiffs further urge that the quit claim deed constituted a gift of public property to the board and that the alleged consideration was a sham.

■ When a street is vacated and the municipality does not own the underlying fee, the municipality has no proprietary interest in the property and is not entitled to compensation.[11]

The asserted "reversionary interests" claimed by the two plaintiffs, who are property owners in Argonne Park, are predicated on certain language in *Boskovich v. Midvale City Corp.*[12]

. . . We have held . . . that if the dedicated streets of a subdivision are laid out and right to the use thereof has arisen, a private easement arises therein which constitutes a vested proprietary interest in the lot owners, which easement survives extinguishment of any co-existing public easement calling for just compensation. . . .

Section 10–8–8.5, U.C.A.1953, expressly provides that the action of a governing

**8.** *White v. Salt Lake City*, 121 Utah 134, 239 P.2d 210 (1952).

**9.** *Fenton v. Ceder Lumber & Hardware Company*, 17 Utah 2d 99, 404 P.2d 966 (1965).

**10.** *Payne v. City of Laramie*, Wyo., 398 P.2d 557, 562 (1965).

**11.** *Puget Sound Alumni of Kappa Sigma v. City of Seattle*, 70 Wash.2d 222, 422 P.2d 799 (1967); 11 McQuillin, Municipal Corporations (3rd Ed. Rev.) § 30.189, p. 123.

**12.** 121 Utah 445, 243 P.2d 435, 437 (1952).

body vacating a street shall not impair the right of way and easements therein, if any, of any lot owner.

The board has made no attempt to close the vacated street and thus interfere with any private easements.[13] The trial court concluded as a matter of law:

> "The private rights, if any, of the owners of property in the Argonne Subdivision are not concluded or determined by these Findings, Conclusions or Judgment."

Whatever private easements the property owners of Argonne Park might have, they are certainly not the type of reversionary interests which plaintiffs claim. The claim was that upon termination of the city's determinable fee, the underlying fee reverted to the owners in Argonne Park rather than the abutting fee holder, the board. The asserted consequence thereof was to deprive them of property without due process of law and to condemn property without a proceeding in eminent domain. This claim is without merit.

ELLETT, C. J., and CROCKETT, WILKINS and HALL, JJ., concur.

---

**13.** This court has never expressly ruled on the extent of the easement acquired when one receives a conveyance which describes the property sold by reference to a plat or map upon which the streets and alleys are shown. There are three divergent views as to the extent of this right and to the granting of relief against obstruction. See 7 A.L.R.2d 607, Anno.: Conveyance of lot with reference to plat or map as giving purchaser rights in indicated streets, alleys, or areas not abutting his lot, § 2, p. 612. Also see 2 Thompson On Real Property (1961 Replacement) § 371, pp. 488-489.