TERRACOR, a Utah
corporation, Plaintiff,

v.

The UTAH BOARD OF STATE LANDS & FORESTRY, George Buzianis, Chairman of the Utah Board of State Lands & Forestry, the Utah Division of State Lands & Forestry, Ralph Miles, Director of the Division of State Lands & Forestry, Utah Department of Natural Resources, Temple A. Reynolds, Executive Director of the Utah Department of Natural Resources, Bloomington Knolls Association, a Utah nonprofit association, Joseph E. Jones, Roy Hardy, principals of Bloomington Knolls Association, Defendants.

No. 20270.

Supreme Court of Utah.

March 7, 1986.

Peter W. Billings, Jr., Denise A. Dragoo, Rosemary J. Beless, Michelle Mitchell, Salt Lake City, for plaintiff.

David L. Wilkinson, Atty. Gen., Anne M. Stirba, Asst. Atty. Gen., Clark Arnold, Salt Lake City, for defendants.

STEWART, Justice:

Pursuant to Rule 65B(b)(3) of the Utah Rules of Civil Procedure,[1] the plaintiff, Terracor, petitions this Court for extraordinary relief in the nature of a writ of mandamus, directing the Board of State Lands and Forestry and the Division of State Lands and Forestry to rescind a special use lease ("SULA 593") issued by the Board to Bloomington Knolls Association. Terracor alleges that (1) the Board violated U.C.A., 1953, § 65–1–68,[2] which permits the Board to sell subdivided school trust lands by public auction but does not allow the Board to dispose of such lands by negotiated leases; and (2) the Board breached its fiduciary responsibility to obtain the highest possible return from school trust lands by issuing SULA 593 without competitive bidding. Terracor claims that extraordinary relief is necessary because it has no plain and adequate remedy at law since section 65–1–9,[3] which provides for appeals from some kinds of Board decisions, does not expressly state that appeals should be to the district court and that under decisions of this Court it is not clear whether this Court or the district court is the proper forum for an appeal in the first instance. Terracor also claims extraordinary relief is appropriate because the language of section 65–1–68 is clear and mandatory, and under *Archer v. Utah State Land Board*, 15 Utah 2d 321, 392 P.2d 622, 623 (1964), and *Hamblin v. State Board of Land Commissioners*, 55 Utah 402, 187 P. 178 (1919), as well as Rule 65B, mandamus is an appropriate remedy where a public agency or official has violated a clear duty mandated by statute. The defendants counter that extraordinary re-

---

1. Terracor's petition was filed with this Court October 29, 1984. A petition for extraordinary writ to a judge or agency filed with this Court after January 1, 1985, would be governed by Rule 19 of the Utah Rules of Appellate Procedure.

2. Section 65–1–68 states:

 Any portion of the public lands of this state not occupied by bona fide settlers having preference right of purchase, may be subdivided into lots, and sold as provided in this chapter, the board first being satisfied that by a subdivision of any tract into lots a sale of the same can be made for a greater amount than if sold in legal subdivisions. The board may survey such tracts and direct their subdivision. A plat of the survey shall be filed in the office of the county recorder of the county wherein the land is situated, and a copy in the office of the board. Tracts so subdivided shall not be subject to lease, but each lot shall be sold at public auction at such times as the board may direct. The manner of appraisement and sale of such subdivided lands shall be in all respects the same as in the case of other lands sold.

3. Section 65–1–9 states:

 (1) Where contests arise as to the preference rights of claimants for lands under the control of the board, it shall have full power to hold a hearing thereon and to direct the taking of evidence concerning the questions involved, which hearing shall be reported in full. The board shall make findings of fact and conclusions of law, enter its order with respect thereto, and notify the parties to such hearing of its findings, conclusions and order.

 (2) No claimant for lands under control of the board can appeal for judicial review of a decision of the board involving any sale, lease, or disposition of state lands, or any action relating thereto, unless such claimant files a written protest with respect thereto with the board within ninety days after the final decision of the board relating to such matter; or, with respect to decisions rendered prior to the effective date of this act, within ninety days after such effective date. This provision shall not relate to disputes between the board and any party as to the ownership or title to any lands.

lief is improper because Terracor only seeks clarification of an unclear statute and that Terracor had a plain and adequate legal remedy by means of an appeal under section 65-1-9. Since we deny Terracor's petition for an extraordinary writ because it lacks standing, we do not decide these issues.

In late 1983 or early 1984, Terracor approached the State Land Board and sought to acquire the 10.9-acre parcel of land at issue by exchanging an equivalent amount of property that Terracor owned. Some time after that, Bloomington Knolls applied to the Land Board to lease the same 10.9 acres, with the intention of subdividing the parcel for development as homesites. The Board notified Terracor of the competing proposal and explained that to make the land exchange acceptable Terracor would have to offer more land in exchange, or land of a greater value, since the land Terracor had offered would not be developable for several years. The Board also notified Terracor that approval of the lease to Bloomington Knolls would, in effect, constitute a rejection of Terracor's proposal. Terracor did nothing more toward negotiating an exchange. In May, 1984, the Board leased the 10.9 acres of school trust land to Bloomington Knolls.

Terracor protested the Land Board's leasing procedure on the ground that it was contrary to state law and that it would result in unfair competition. On September 18, 1984, the Board ruled that Terracor had waived its right to protest by doing nothing to indicate a continuing interest in the land after being informed of Bloomington Knolls' proposal. The Board also ruled that its procedures were in compliance with state law and that it had not violated its fiduciary responsibilities with respect to the administration of state school trust lands by leasing the disputed parcel pursuant to a negotiated lease rather than by auction.

Terracor then filed this petition for extraordinary relief directly in this Court. Terracor does not assert in this action that the Board erred in refusing Terracor's proposed exchange. Indeed, in its "Petition for Relief Under Rule 65B(b)(3)" filed in this Court, Terracor admits that it does not now challenge the granting of the lease to Bloomington Knolls rather than to it. Thus, the action in this Court is not based on Terracor's losing out to Bloomington Knolls for the parcel in question. Rather, Terracor asserts only that the Board violated state law by leasing rather than selling the parcel in question and violated its fiduciary duty to maximize the return on all school trust lands by negotiating a lease of a portion of those lands rather than requiring competitive bidding. It is noteworthy that Terracor's aborted efforts to acquire the land were based on the same type of negotiated procedure that it now alleges is illegal.

 The parties have not raised or addressed the question of Terracor's standing to bring this petition to challenge the legality of the Land Board's lease. However, this Court may address that issue *sua sponte*. *Utah Restaurant Association v. Davis County Board of Health*, Utah, 709 P.2d 1159 (1985); *Heath Tecna Corp. v. Sound Systems International, Inc.*, Utah, 588 P.2d 169, 170 (1978). A petitioner for extraordinary relief must have standing, just as any other litigant must have. *See, e.g., Startup v. Harmon*, 59 Utah 329, 336, 203 P. 637, 640–41 (1921); *Crockett v. Board of Education*, 58 Utah 303, 309, 199 P. 158, 160 (1921).

 The doctrine of standing is intended to assure the procedural integrity of judicial adjudications by requiring that the parties to a lawsuit have a sufficient interest in the subject matter of the dispute and sufficient adverseness that the legal and factual issues which must be resolved will be thoroughly explored. Unlike federal law where standing doctrine is related to the "case or controversy" language of Article III of the United States Constitution, our standing law arises from the general precepts of the doctrine of separation of powers found in Article V of the Utah Constitution. Under Utah law, the doctrine of standing operates as gatekeeper to

the courthouse, allowing in only those cases that are fit for judicial resolution. Important jurisprudential considerations dictate that courts confine themselves to resolution of those disputes most effectively resolved through the judicial process, i.e., crystalized disputes concerning specific factual situations. *Flast v. Cohen,* 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968); *Jenkins v. Swan,* Utah, 675 P.2d 1145, 1149 (1983). Thus, the doctrine of standing limits judicial power so that there will not "be a significant inroad on the representative form of government, cast[ing] the courts in the role of supervising the coordinate branches of government ... [and converting] the judiciary into an open forum for the resolution of political and ideological disputes about the performance of government." *Baird v. State,* Utah, 574 P.2d 713, 717 (1978). *See also United States v. Richardson,* 418 U.S. 166, 188–92, 94 S.Ct. 2940, 2952–54, 41 L.Ed.2d 678 (1974) (Powell, J., concurring). For this reason, this Court will not lightly dispense with the requirement that a litigant have a personal stake in the outcome of a specific dispute. *Jenkins v. Swan, supra,* 675 P.2d at 1150; *see also Stromquist v. Cokayne,* Utah, 646 P.2d 746, 747 (1982); *Jenkins v. Finlinson,* Utah, 607 P.2d 289, 290 (1980); *Jenkins v. State,* Utah, 585 P.2d 442, 443 (1978); *Sears v. Ogden City,* Utah, 572 P.2d 1359, 1362 (1977). Nevertheless, it is difficult to make useful, all-inclusive generalizations that determine whether standing exists in any given case, since the issue often depends on the facts of each case. *Kennecott Copper Corp. v. Salt Lake County,* Utah, 702 P.2d 451, 453 (1985); *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 151, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970).

■ This Court has referred to three general standards for determining whether a litigant has standing.[4] *Jenkins v. Swan, supra,* 675 P.2d at 1150; *see also Kenne-*

*cott Copper Corp. v. Salt Lake County, supra,* 702 P.2d at 454. The premise upon which these standards have been constructed is that issues should generally be litigated by those parties with the most direct interest in resolution of those issues, although in some cases a party who does not have the most immediate or direct interest may have standing.

The first general criterion is that the "[p]laintiff must be able to show that he has suffered some distinct and palpable injury that gives him a personal stake in the outcome of the legal dispute." *Jenkins v. Swan, supra,* 675 P.2d at 1148. *See also Kennecott Copper Corp. v. Salt Lake County, supra,* 702 P.2d at 454; *Stromquist v. Cokayne, supra,* 646 P.2d at 747; *Sears v. Ogden City, supra,* 572 P.2d at 1362; *Main Parking Mall v. Salt Lake City Corp.,* Utah, 531 P.2d 866 (1975); *Johnson v. State Tax Commission,* 17 Utah 2d 337, 342 n.7, 411 P.2d 831, 834 n.7 (1966); *State v. Kallas,* 97 Utah 492, 504, 94 P.2d 414, 420 (1939) (must be personally affected by operation of statute to attack its validity).

Second, if a plaintiff does not have standing under the first criterion, he may have standing if no one else has a greater interest in the outcome of the case and the issues are unlikely to be raised at all unless that particular plaintiff has standing to raise the issue. *Kennecott Copper Corp. v. Salt Lake County, supra,* 702 P.2d at 454; *Jenkins v. Swan, supra,* 675 P.2d at 1150. *See also Startup v. Harmon,* 59 Utah 329, 336, 203 P. 637, 640–41 (1921); *Crockett v. Board of Education,* 58 Utah 303, 309, 199 P. 158, 160 (1921).

Third, even though standing is not found to exist under the first two criteria, a plaintiff may nonetheless have standing if the issues are unique and of such great public importance that they ought to be decided in furtherance of the public interest. *Jenkins v. Swan, supra,* 675 P.2d at 1150; *Jenkins*

---

4. In addition, taxpayers may have standing to challenge an illegal expenditure. *E.g., Lyon v. Bateman,* 119 Utah 434, 228 P.2d 818 (1951);

*Tooele Building Association v. Tooele High School District,* 43 Utah 362, 134 P. 894 (1913).

v. *Finlinson, supra,* 607 P.2d at 290; *Jenkins v. State, supra,* 585 P.2d at 443.

■ Terracor meets none of these requirements. It has not alleged any *"particularized* injury to [itself] by virtue of the claimed wrong." *Jenkins v. Swan, supra,* 675 P.2d at 1151 (emphasis in original). Terracor's proposed exchange of land for the tract which was subsequently leased to Bloomington Knolls by SULA 593 does not provide a valid basis for standing since Terracor has specifically conceded in its pleadings that its challenge is not based on the Board's failure to accept that proposal. Indeed, Terracor does not assert that its proposal was of greater value or advantage to the State than Bloomington Knolls' proposal. In fact, Terracor's own proposal for a negotiated exchange was wholly inconsistent with the position it now asserts that such lands can only be disposed of by public auction.

Terracor fares no better under the second part of the *Jenkins* analysis. There are others who could raise the same challenges raised by Terracor, and who would have a greater, more direct interest in doing so. For example, one who attempts to purchase the same school lands as another and loses out to the other would have standing if the basis of the action was the failure of the Board to lease to that particular person rather than the competition to one's business or a result of a lease to another party. Furthermore, beneficiaries of the school trust land would no doubt have standing to assert a violation of the Board's fiduciary responsibility to maximize the return from school trust lands. Thus, the State Treasurer, who receives 20% of all monies collected by the Division pursuant to U.C.A., 1953, § 65-1-13, and possibly the Attorney General, would have standing to assert a violation by the Board of its legal and fiduciary responsibilities.

Since there are "other potential plaintiffs with a more direct interest" in the issues in this case, we decline to reach the third test, whether the public importance of the issues raised is so great that they ought to be litigated in any event. *Jenkins v. Swan, supra,* 675 P.2d at 1151.

Since Terracor does not have standing, we do not address the question whether Terracor has an adequate remedy at law by way of an appeal under section 65-1-9.

Petition denied. No costs.

HALL, C.J., and SCOTT DANIELS, District Judge, concur.

ZIMMERMAN, J., does not participate herein.

SCOTT DANIELS, District Judge, sat.

HOWE, Justice (dissenting):

I dissent from what I perceive to be a very narrow application of the rules of "standing" to the plaintiff. The Land Board had before it two competing proposals. Terracor's proposal was to exchange land. Bloomington Knolls' proposal was to lease the state land and subdivide it for home sites. The Board rejected Terracor's proposal and accepted the proposal of Bloomington Knolls'. Terracor protested to the Board, and now protests to this Court, that the Board has no statutory authority to lease state lands and that in so doing unfair competition resulted.

The majority concedes that "one who attempts to purchase the same school lands as another and loses out to the other person, would have standing." Yet the majority holds that Terracor has no standing even though it was attempting to acquire the same lands as its competitor Bloomington Knolls but proposed to do so by exchange rather than by leasing. Why that difference should destroy Terracor's standing completely eludes me. The majority seems to find comfort in the fact that Terracor declined the Board's invitation to make its proposal more attractive. Terracor, thereafter, the majority argues, had no interest and lacked standing to question what the Board did with the land. I cannot subscribe to this reasoning. In the first place, Terracor's rejection came simultaneous with Bloomington Knolls' acceptance. The rejection and the acceptance

were not separated by a period of time. Secondly, the interest of a competitor does not necessarily dissipate when its proposal is rejected. It remains interested in what the Board does thereafter with the land, especially when, as alleged here, the Board disposes of it in an alleged unlawful transaction which should be set aside and the land restored to the Board.

The majority endeavors to find support for its holding that Terracor lacks standing because "Terracor does not assert in this action that the Board erred in refusing Terracor's proposed exchange." That argument leads nowhere. Of course, the Board has discretion in choosing proposals before it. Neither Terracor nor any other competitor could validly argue that the Board was obliged to accept its proposal. However, what Terracor is contending for is that the Board accepted a proposal which it could not lawfully do. When unlawful proposals are removed from consideration by the Board, the Board is left to reconsider the remaining proposals. Furthermore, as long as the land remains in the hands of the Board, a competitor is afforded the continuing opportunity to "sweeten" his proposal.

DURHAM, J., concurs in the dissenting opinion of HOWE, J.