ALDRICH, NELSON, WEIGHT & ESPLIN, Petitioner,

v.

DEPARTMENT OF EMPLOYMENT SECURITY, Respondent.

No. 930645–CA.

Court of Appeals of Utah.

July 28, 1994.

---

Jens P. Fugal, Gary H. Weight (Argued), Aldrich, Nelson, Weight & Esplin, Provo, for petitioner.

Emma R. Thomas (Argued), K. Allan Zabel, Sp. Asst. Atty. Gen., Salt Lake City, for respondent.

Before BENCH, GREENWOOD, and JACKSON, JJ.

GREENWOOD, Judge:

Petitioner, the law firm of Aldrich, Nelson, Weight, & Esplin (Aldrich), appeals a decision by the Board of Review of the Industrial Commission of Utah (Board) limiting Aldrich's attorney fees to twenty-five percent of its client's maximum unemployment benefit entitlement. We affirm.

## BACKGROUND

Aldrich represented Abraham Karbakhsh in an administrative hearing before the Industrial Commission of Utah (Commission) to determine Mr. Karbakhsh's eligibility for unemployment benefits. Mr. Karbakhsh's employer, WordPerfect, had terminated him for

cause. In conjunction with his termination, Mr. Karbakhsh had also been charged criminally with theft by deception.[1]

Mr. Karbakhsh approached Aldrich after dismissing his first attorney as being too expensive. Aldrich agreed to represent Mr. Karbakhsh in three related matters[2] and Mr. Karbakhsh gave Aldrich a $4300 retainer.[3]

The hearing before the administrative law judge (ALJ) lasted roughly thirteen hours. In preparing for and appearing at the hearing, WordPerfect retained two outside attorneys, used two in-house counsel, and presented nine witnesses. The ALJ ultimately declared Mr. Karbakhsh ineligible for unemployment benefits. He appealed the ALJ's decision to the Board, which upheld the ALJ's decision.[4] Mr. Karbakhsh did not further appeal the Board's decision.

Following the hearing before the ALJ, Aldrich submitted its claim to the ALJ for attorney fees of $4300. Consistent with the Commission's internal rule, the ALJ limited Aldrich's award of attorney fees to twenty-five percent of Mr. Karbakhsh's maximum unemployment benefit entitlement, or $1436.50. Aldrich appealed the ALJ's decision to the Board, which upheld it. The Board's affirmance of the ALJ's decision was based in part on the erroneous finding that Mr. Karbakhsh's hearing had lasted only four hours. Aldrich appealed that finding to this court which determined it was erroneous and remanded the case to the Board for further consideration. On remand, the Board corrected the finding regarding the number of hours and again affirmed, without a hearing, the ALJ's award amount. Aldrich now appeals the Board's decision on remand.

**1.** The criminal charges were later dismissed at a preliminary hearing.

**2.** The three related matters were (1) a claim for unemployment benefits, (2) a claim for unlawful discrimination pending before the Utah Equal Employment Opportunity Commission, and (3) a wrongful termination claim against WordPerfect.

**3.** Mr. Karbakhsh's wife advanced him the $4300 retainer, which she paid directly to Aldrich. The record is unclear whether Aldrich intended this initial retainer of $4300 to cover Aldrich's fees

## ISSUES

On appeal, Aldrich asserts five points of error that can be fairly grouped into three issues: (1) the Board arbitrarily and capriciously capped Aldrich's attorney fees without providing a basis for its decision and without considering the reasonableness of the fees in light of the complexity of Mr. Karbakhsh's case; (2) the Board's limitation of attorney fees effectively denied Mr. Karbakhsh due process; and (3) the Board deprived Aldrich of due process by ruling on the attorney fee issue without holding an evidentiary hearing.

## STANDARD OF REVIEW

The Utah Administrative Procedures Act (UAPA) provides both the relevant standard of review for, and the circumstances where this court can grant relief from, a final agency action resulting from formal adjudicative proceedings. Utah Code Ann. § 63–46b–16 (1993). Pertinent to this case, we can grant relief only if, on the basis of the agency's record, we determine that Aldrich has been substantially prejudiced by one of the following: (1) the agency action exceeded its statutory jurisdiction, (2) the agency erroneously interpreted or applied the law, (3) the agency based its action upon a determination of fact, made or implied by the agency, that is not supported by substantial evidence when viewed in light of the whole record before the court, or (4) the agency action is an abuse of the discretion delegated to the agency by statute or otherwise arbitrary or capricious. *Id.* § 63–46b–16(4)(b), (d), (g), (h)(i) & (iv); *accord Morton Int'l, Inc. v. State Tax Comm'n,* 814 P.2d 581, 583–84 (Utah 1991).

for the three related matters or only for the proceedings before the Commission. Nevertheless, Aldrich apparently exhausted the $4300 retainer in representing Mr. Karbakhsh before the Commission and submitted a request for attorney fees in that amount to the Commission.

**4.** On appeal to the Board, Mr. Karbakhsh was represented by his wife, a non-attorney, rather than Aldrich because it had already consumed Mr. Karbakhsh's $4300 retainer in representing him before the Commission.

## ANALYSIS

### Standing

■ Before addressing the merits of Aldrich's legal arguments, we address the question of whether Aldrich has standing to argue that the Board's decision regarding attorney fees denied Mr. Karbakhsh due process. The issue of standing is a legal question which we review for correctness. It "operates as a gatekeeper to the courthouse, allowing in only those cases that are fit for judicial resolution." *Terracor v. Utah Bd. of State Lands,* 716 P.2d 796, 798–99 (Utah 1986). Accordingly, we can raise the issue sua sponte even though neither party has raised it below. *Society of Professional Journalists v. Bullock,* 743 P.2d 1166, 1169 (Utah 1987); *Terracor,* 716 P.2d at 798.

■ In *Jenkins v. Swan,* 675 P.2d 1145 (Utah 1983), our supreme court discussed three alternate ways an aggrieved party can achieve standing. *Id.* at 1150–51; *accord Society of Professional Journalists,* 743 P.2d at 1170; *Kennecott Corp. v. Salt Lake County,* 702 P.2d 451, 453–54 (Utah 1985). First, an aggrieved party has standing if it can demonstrate a personal stake in the controversy and there is some "causal relationship alleged between the injury to the plaintiff, the governmental actions and the relief requested." *Jenkins,* 675 P.2d at 1150. Second, if the aggrieved party does not have standing under the first part, a court may still grant standing if there is no other party who has a greater interest in the outcome of the case than the aggrieved party and if the issue is unlikely to be raised at all if standing is denied. *Id.* Finally, if the aggrieved party has not established standing under parts one or two, a court can nonetheless grant standing if the aggrieved party raises issues of sufficient public importance. *Id.*

■ In the present case, Aldrich clearly has a personal stake in the outcome of the attorney fee issue. However, insofar as Aldrich supports that position by arguing that the Board's decision effectively denied Mr. Karbakhsh due process, we believe Aldrich lacks standing. Aldrich does not have a personal stake in whether Mr. Karbakhsh's due process rights were violated. Further, it is Mr. Karbakhsh who has a greater interest in the issue of due process than Aldrich; therefore, he should be the one to raise the issue, not Aldrich. Finally, the issue of Mr. Karbakhsh's due process rights is not of such great public importance that this court should grant standing to Aldrich to argue the due process issues. We take this position because there is no showing on the record before us that Mr. Karbakhsh's due process rights were in any way infringed by the attorney fee award. Indeed, Aldrich represented Mr. Karbakhsh throughout the ALJ hearings despite the likelihood, given the extant rule, it would not receive full compensation for its services. Likewise, there is no evidence Mr. Karbakhsh was prejudiced by the lack of legal counsel at the Board proceedings. Given this situation it would be inappropriate to address the theoretical due process rights of unknown petitioners. Accordingly, we decline to address Aldrich's arguments to the extent they require us to address Mr. Karbakhsh's due process rights. However, Aldrich does have a personal stake in the outcome of the Board's decision regarding attorney fees and we thus proceed to address its claims that the Board acted arbitrarily and capriciously in making its decision and that it denied Aldrich due process by not holding, on remand, an evidentiary hearing.

### Power of Board to Fix and Regulate Attorney Fees

■ Aldrich's principal argument is that the Board decided the attorney fee issue arbitrarily and capriciously because it failed to modify its earlier decision despite an order of remand from this court noting that the hearing took thirteen, rather than four hours, as stated in the ALJ's order.[5]

---

5. We are aware of the longstanding rule that an attorney cannot enforce an attorney's lien unless he or she is already a party to the action, petitions the court to intervene, or initiates a separate action. *See, e.g., McDonald v. McDonald,* 866 P.2d 1253, 1254–55 (Utah App.1993) (attorney can only enforce attorney's lien in separate action or by intervening); *Sierra Club v. Department of Envtl. Quality,* 857 P.2d 982, 986–87 (Utah App.1993) (stipulation between parties gave Sierra Club standing to appear before administrative body but Sierra Club also had to

■ This entire controversy revolves around the Commission's internal rule limiting attorney fees to twenty-five percent of a claimant's maximum unemployment benefit entitlement. That rule states:

> Fees will not be approved in excess of 25% of the claimant's maximum unemployment benefit entitlement unless such a limitation would preclude the claimant from pursuing an appeal to the Supreme Court or would preclude in some other way an opportunity for due process.

Utah Code Admin.P. R562–18b–3(5).[6] This rule, promulgated by the Commission, appears to be in harmony with the Commission's governing statute, which states that "[i]n all cases coming before the Industrial Commission in which attorneys have been employed, the commission is vested with full power to regulate and fix the fees of such attorneys." Utah Code Ann. § 35–1–87 (1988).

The early Utah case of *Thatcher v. Industrial Commission*, 115 Utah 568, 207 P.2d 178 (Utah 1949) found a similar governing statute on attorney fees awarded by the Industrial Commission to be both constitutional and rational. *Id.*, 207 P.2d at 182; *see also Ellis v. Industrial Comm'n*, 91 Utah 432, 438–39, 64 P.2d 363, 367 (Utah 1937). The *Thatcher* court held that the legislature, using its police powers, has the right in compensation cases to "impair the freedom of right to contract between an attorney and his client for a fee by giving the Industrial Commission full power to regulate and fix reasonable fees of attorneys in cases before the commission in which attorneys have been employed." *Thatcher*, 207 P.2d at 182. The court also noted that because

> the amounts which may be awarded under the compensation act are at all times very modest, and in inflationary times practically penurious, it is apparent that the very purposes of the act would be defeated if attorneys were limited only by the canons of professional ethics in the fixing of fees for services rendered in compensation cases. To permit attorneys to charge usual fees in cases of this sort might practically emasculate any value of the compensation act to the workman. And by this, we do not imply that attorneys habitually charge exorbitant or unfair fees for their services. Rather, in compensation cases, the attorneys must and are willing to accept for their services less than they would receive for the same amount of work in other types of cases. This is more or less in the nature of a professional duty somewhat similar to the duty to defend impecunious defendants in criminal cases.

*Id.*[7]

Given the holding in *Thatcher* and the apparent harmony between the legislature's broad grant of authority and the Commis-

---

meet statutory intervention rules found in Utah Administrative Procedures Act); *Albrechtsen v. Albrechtsen*, 18 Utah 2d 55, 57, 414 P.2d 970, 971 (1966) (attorney is without standing to enforce attorney's lien where no motion was made to intervene and become party to action).

The Commission's internal rules apparently compensate for this procedural hurdle by treating the determination of attorney fees as a separate action. *See* Utah Code Admin.P. R562–18b–2 & –4. We note further that the Commission assigned separate case numbers to Aldrich's request for attorney fees and Mr. Karbakhsh's claim for unemployment compensation. Accordingly, in this particular case Aldrich is a proper party to the proceeding and need not intervene under the rationale of *McDonald, Sierra Club,* and *Albrechtsen.*

6. Rule 562–18b–3(5) leaves only one avenue of escape from the 25% rule—if the fee limitation precludes the claimant from pursuing an appeal to the supreme court or otherwise precludes an opportunity for due process. Inasmuch as Mr. Karbakhsh has not himself raised any issues regarding lack of due process stemming from the ALJ's ruling on attorney fees, Aldrich lacks standing to argue this exception to the rule.

7. Interestingly, the *Thatcher* court also admonished the Commission that "[w]hile attorneys may not hope to be compensated to the full measure of the value of their time and work, they must not be limited to such niggardly fees that they cannot afford to accept compensation cases." *Thatcher v. Industrial Comm'n*, 115 Utah 568, 577, 207 P.2d 178, 182 (Utah 1949). Furthermore, the *Thatcher* court also noted that it is "[b]etter that an applicant should lose 15% to 20% of his benefits in attorneys' fees than that he should receive no benefits at all merely because no lawyer could afford or would be willing to accept his case." *Id.* Using the *Thatcher* court's benchmark of 15%–20%, the Commission's rule capping attorney fees at 25% at least seems consistent with that decision.

sion's rule limiting attorney fees,[8] we are compelled to hold that the rule is valid.[9]

We acknowledge, however, Aldrich's predicament of defending an unemployed client against a deep-pocket employer who operates outside the constraints of the Commission's cap on attorney fees. The record reveals that despite the "simplicity" of the issue, Mr. Karbakhsh's former employer used at least two attorneys from a local law firm, as well as utilizing in-house counsel, to defend its position before the ALJ and the Commission. WordPerfect had two attorneys present and produced nine witnesses at the hearing, which lasted approximately thirteen hours with two continuances. The ethical canons of legal practice that compelled Aldrich to provide its client with adequate representation dictated to some extent that Aldrich respond to the thorough and time-consuming preparation that WordPerfect's legal counsel bestowed on the case in fulfilling their professional responsibilities. This seems to be at least potentially unfair and is compounded by the rule's inflexibility even in the face of extenuating circumstances. Nonetheless, we affirm the Board's decision regarding attorney fees because it conformed to the Commission's internal rule regarding limitation of attorney fees, which, in turn, is not inconsistent with the governing statute.

### Evidentiary Hearing and Due Process

■ Aldrich asserts finally that the Board violated its due process rights by failing to permit it an opportunity to present evidence justifying the requested fee.

The Utah Supreme Court addressed this issue as well in *Thatcher*, stating that "if the attorneys or the applicant ask for a hearing on the matter either before the fee is fixed or for a rehearing after the fee is fixed on the amount of the fee allowed, the same should be granted in order to satisfy the requirements of due process." *Thatcher*, 207 P.2d at 183; *accord McCluskey v. Industrial Comm'n*, 80 Ariz. 255, 296 P.2d 443, 446 (1956); *Crenshaw v. Industrial Comm'n*, 712 P.2d 247, 250 (Utah 1985).

Our review of Aldrich's appeal letter to the Board shows that Aldrich never requested a hearing on the matter. Rather, the letter simply lays out Aldrich's arguments and then asks the Board to "review" the ALJ's decision. Furthermore, we do not believe that Aldrich failed to prevail on the attorney fee issue for lack of a hearing; the letter to the Board fairly sets forth Aldrich's position. Given the absolute nature of the Commission's attorney fee limitation rule, we are unpersuaded that an evidentiary hearing would have altered the outcome. Accordingly, we reject Aldrich's argument that the Board violated its due process rights.

### CONCLUSION

We affirm the Board's decision to limit Aldrich's attorney fees in this matter to twenty-five percent of Mr. Karbakhsh's maximum unemployment benefit entitlement. The Commission's rule limiting attorney fees is not discordant with the legislature's broad grant of authority to the Commission to regulate and fix attorney fees in matters that come before it. Furthermore, Aldrich lacks standing to argue that the Board's decision deprived Mr. Karbakhsh of due process. Finally, the Board's failure to hold an eviden-

---

**8.** *See Sanders Brine Shrimp v. State Tax Comm'n*, 846 P.2d 1304, 1306 (Utah 1993) ("It is a longstanding principle of administrative law that an agency's rules must be consistent with its governing statutes.").

**9.** In so holding, we nonetheless echo the sentiments expressed by Justice Folland's concurring opinion in *Ellis* when he said,

We do not sustain the commission's action because we are of the opinion it has fixed a reasonable fee, but because the statute vests in the commission the power to fix and regulate attorneys' fees in this kind of cases, and its action was not wholly arbitrary and capricious. The statute says nothing about an adequate fee or about reasonable fees....

*Ellis*, 64 P.2d at 371 (Folland, J., concurring). If the Commission's "hard luck" rule limiting attorney fees is problematic, it must be dealt with by the Legislature. *See id.* at 365–66 ("If it be found that the policy established tends to work unfairness or injustice as to parties before the Industrial Commission, or fails in the accomplishment of the purposes of the law, application to the Legislature should be made to remedy the situation.").

tiary hearing on the attorney fees issue did not violate Aldrich's due process rights.

BENCH, J., concurs.

JACKSON, Judge (concurring specially):

Aldrich's standing is questioned regarding its pursuit of three separate claims: (1) violation of Mr. Karbakhsh's due process by the Commission's Board of Review; (2) approval of counsel fees pursuant to Utah Code Admin.P. R562–18b; and (3) failure to hold a hearing on remand. I agree that Aldrich's standing on the due process issue relating to Karbakhsh should be analyzed under the general standing principles set forth in *Jenkins v. Swan*, 675 P.2d 1145 (Utah 1983). Moreover, I agree that Aldrich does not pass standing muster for this issue. Further, I agree that Aldrich has standing to pursue the attorney fee issue.

But, I do not agree that the *Jenkins* analysis is necessary to determine Aldrich's standing regarding issues of fees and failure to hold a hearing on remand because Aldrich is fully qualified to bring the action because of the Industrial Commission's own procedure and practice. Section R562–18b of the Administrative Code is entitled "Approval of Counsel Fees." This Section sets forth a detailed procedure whereby the "claimant's representative" may seek approval of a fee for counsel. The Commission provides an approval form through its appeals office and criteria for evaluation of the fee petition with a twenty-five percent limitation unless the limitation would preclude pursuit of appellate court review or due process. Utah Code Admin.P. R562–18b–2, –3 (1994). Finally, the Administrative Code provides a procedure for appealing Commission rulings on fees. Utah Code Admin.P. R562–18b–4. Because the Commission confers standing directly upon the "claimant's representative," and provides a collateral procedure, we need not look elsewhere for our analysis.