Brian M. BARNARD, Petitioner and Appellant,

v.

MOTOR VEHICLE DIVISION OF the UTAH STATE TAX COMMISSION, and the Utah State Tax Commission, Respondents and Appellees.

No. 950304–CA.

Court of Appeals of Utah.

Oct. 19, 1995.

---

Brian M. Barnard, John Pace, and Joro Walker, Salt Lake City, for Appellant.

Susan Barnum, Carol Clawson, and Jan Graham, Salt Lake City, for Appellees.

Before DAVIS, JACKSON, and WILKINS, JJ.

## OPINION

WILKINS, Judge:

Barnard challenges the order of the Utah State Tax Commission denying his request to

revoke personalized license plates issued by the commission's Motor Vehicle Division with the letter combinations "REDSKIN," "REDSKN" and "RDSKIN" on them. He claimed before the commission and this court that allowing the objectionable word to appear on automobile license plates issued by the State of Utah constitutes a violation of law.

## BACKGROUND

Barnard wrote to the Motor Vehicle Division of the Tax Commission objecting to the existence of the "REDSKIN" license plate and asking the commission to revoke and request the surrender of the plate pursuant to Utah Administrative Rule 873–22M–34. He later wrote to ask the commission to treat two other personalized plates similarly, those containing the letter combinations "REDSKN" and "RDSKIN."

Approximately one month later, the director of the Motor Vehicle Division wrote Barnard, informing him that his letters had been reviewed and that the division had denied his request to revoke the plates at issue. The letter concluded, "If you disagree with this division decision, you may have certain appeal rights." Barnard was advised to contact the commission for additional information.

Barnard dutifully wrote the chairman of the commission to inquire of his appeal rights, the process and time limits involved, and to indicate that he desired to pursue the matter on appeal. During the next two months, receiving no answer from the commission, Barnard wrote twice more, asking essentially the same questions.

By formal notice from the commission, Barnard was advised that the matter had been scheduled for a formal hearing to "take evidence and hear arguments regarding Petitioner's request for agency action." The notice was also given to the director of the Motor Vehicle Division, and both parties were advised that a "default" could be entered against any party who failed to attend or participate in the hearing.

A hearing was held. However, the transcript supplied on appeal indicates that informal discussions were held without a record prior to the commencement of the formal record. The record begins in midsentence, attributed to the attorney for the division, with the phrase "—brought the actual evidence with me because my understanding is you don't take evidence at settlement conferences."

Proceeding in part on proffers of evidence, before the entire commission, Barnard presented affidavits from persons identified as enrolled members of various American Indian tribes,[1] all of whom indicated that they found the three license plates offensive and derogatory to the American Indian race. Barnard further presented the testimony of one witness, also an enrolled tribal member, who testified to essentially the same feelings as those of Barnard's affiants. Finally, Barnard presented copies of various articles from publications indicating strong dissatisfaction with the use of the word "redskin" in any situation. The state proffered, without objection by Barnard, that the owners of the plates intended no offense and had requested the license plates to show their support for a National Football League team in Washington, D.C., the Washington Redskins. No other evidence was presented.

After deliberation, the commission issued a written order by which it denied Barnard's request to revoke and seek surrender of the license plates at issue. This appeal followed.

## ISSUES AND STANDARD OF REVIEW

On appeal, Barnard challenges the commission's order in two particulars. He first claims that because the challenged plates are derogatory, offensive, and expressive of ridicule toward American Indians, the

---

1. We have chosen "American Indians" as the generic label for what are in reality a number of individual nations and tribes, recognizing that others favor "Native Americans," and still others prefer different labels. We are aware that Columbus did not land in India, and that there are other races indigenous to what is now the United States who are not considered part of the group to whom we here refer. We have selected this descriptor, hoping it will cause the least offense.

plates violate Utah law [2] and must be revoked. Where, as here, the governing statute makes an explicit grant of discretion to the commission, we apply a reasonableness and rationality standard, and may only overturn the commission's conclusions of law if they are unreasonable and irrational. *Union Pac. R.R. v. Auditing Div.*, 842 P.2d 876, 881 (Utah 1992).

■ Barnard also claims that these plates are offensive, derogatory, and expressive of ridicule toward American Indians in violation of Administrative Rule 873–22M–34, and therefore the commission's decision in this matter cannot stand.[3] Whether an agency's action is contrary to a rule of the agency is another issue which we review by applying the intermediate-deference standard of reasonableness and rationality. *Thorup Bros. Constr., Inc. v. Auditing Div.*, 860 P.2d 324, 327 (Utah 1993).

■ On the other hand, the division, in addition to defending the order of the commission on various legal grounds, asserts that Barnard lacks standing in this matter. Although the division raised the question of Barnard's standing before the commission below, the commission did not deal with that issue in its order. Nevertheless, the question of Barnard's standing before this court on appeal is ours alone to determine. The issue of standing is a question of law. *Aldrich, Nelson, Weight & Esplin v. Department of Employment Sec.*, 878 P.2d 1191, 1194 (Utah App.1994).

**2.** The only statute at issue is Utah Code Ann. § 41–1a–411(2) (1993), which provides: "The division [of motor vehicles] may refuse to issue any combination of letters, numbers, or both that may carry connotations offensive to good taste and decency or that would be misleading."

**3.** The only rule at issue is Utah Admin.R. 873–22M–34 (1994), which provides:

B. Pursuant to Section 41–1a–411(2), the division may not issue personalized license plates in the following formats:
  1. Combination of letters, words, or numbers with any connotation that is vulgar, derogatory, profane, or obscene.
  ....
  4. Combinations of letters, words, or numbers that express contempt, ridicule, or supe-

## STANDING

Because Barnard's standing before this court is dispositive, we address that issue first. Barnard's right, if any, to participate in an administrative hearing is different from standing to obtain judicial relief. *See Utah Ass'n of Counties v. Tax Comm'n of Utah*, 895 P.2d 819, 820 (Utah 1995). This is in part true because of the differing functions served by the administrative body and by this court.

Standing is intended to be a flexible concept used to preserve the integrity of judicial review by requiring that matters presented to the court are "adequately defined and crystallized so that judicial procedures focus on specific, well-defined legal and factual issues." *National Parks & Conservation Ass'n v. Board of State Lands*, 869 P.2d 909, 913 (Utah 1993). It is the law of this state that Barnard may establish standing under any one of three general rules.[4] *Id.*

## I.

■ First, Barnard may demonstrate standing before this court by showing some distinct and palpable injury that gives rise to a personal stake in the outcome of the matter.

Whether a plaintiff has the requisite personal stake to challenge a governmental action turns on (1) the existence of an adverse impact on the plaintiff's rights, (2) a causal relationship between the governmental action that is challenged and the adverse impact on the plaintiff's rights,

riority of a defined class of persons, including but not limited to race, religion, deity, ethnic heritage, gender, or political affiliation.

**4.** We are following the approach stated in *National Parks*, 869 P.2d at 913, in which the Utah Supreme Court enunciates three independent grounds for standing. However, we also note that in the earlier case of *Jenkins v. Swan*, 675 P.2d 1145, 1150 (Utah 1983), the supreme court seemed to blend the second and third grounds for standing, saying that "[t]he absence of a more appropriate plaintiff will not automatically justify granting standing to a particular plaintiff. This Court must still determine, on a case-by-case basis, that the issues are of sufficient weight." We further note that either test provides the same result in this case.

and (3) the likelihood that the relief requested will redress the injury claimed. *Id.*

Before the commission and before this court, Barnard claimed his injury was limited to the offense to his personal sensibilities caused by the license plates issued by the state. While it is true that offending a citizen's sensibilities is at best a poor goal for government action, it is also true that it happens often. History, ancient and recent, is replete with examples of justified governmental action that offended some of its citizens' sensibilities. Disagreement with public policy, and any resultant offense at government action, is at the very core of our political system. But it is not enough in this case to justify the involvement of this court in the division's exercise of discretionary authority delegated to it by the legislature. "It is generally insufficient for a plaintiff to assert only a general interest he shares in common with members of the public at large." *Jenkins v. Swan,* 675 P.2d 1145, 1148–49 (Utah 1983). Barnard's personal offense is simply not enough to establish a "personal stake" in the matter or a "particularized" injury, and is insufficient for standing.

## II.

Although Barnard cannot meet the first measure of standing, that of having a sufficient personal stake in the matter, he may still be able to justify standing (1) for an important public issue, (2) when no one else has a greater interest in the outcome, (3) when the issue is unlikely to be raised at all unless Barnard has standing to raise it, and (4) when the legal issues are sufficiently well-defined to be properly subject to judicial review. *See National Parks,* 869 P.2d at 913. The first element of this analysis requires a showing that the matter presented to the court is "an important public issue."

The division argues that license plates containing the letter combinations "REDSKIN", "RDSKIN" and "REDSKN" refer only to support for a nationally recognized football team, and that support for sports teams is one of the proper purposes behind the personalized license plate program administered by the division. Barnard counters that what-

ever the other purposes of allowing these particular plates to issue, they are highly offensive to him, to American Indians, and are, or at least should be, to the rest of civilized society. In support of this position, Barnard presented both affidavits and articles that support his opinion of the importance of the issue.

Unfortunately, while we may agree with Barnard that the continued use and promotion of such racially insensitive labels is a matter of considerable public concern, for Barnard to meet this second test for standing, he must also prove the other three elements of this second test: that no one else has a greater interest in the issue, that the issues are unlikely to be raised at all unless he raises them, and that the issues are sufficiently focused to allow judicial resolution. Barnard has not proven these three elements. The burden is his to establish standing. *Society of Prof. Journalists v. Bullock,* 743 P.2d 1166, 1172 (Utah 1987).

First, by Barnard's own admission, it is American Indians who are most offended and affected by continued use of words and phrases like "redskin," which he claims are racially derogatory. While Barnard is also offended that a term so insulting to a particular ethnic or racial group would be permitted on state license plates, it nevertheless seems evident—in light of the historical significance of this term, which refers explicitly to American Indians—that American Indians indeed have a greater interest in the issue than Barnard.

Secondly, even absent Barnard's willingness to raise the issue with the division—and to pursue it with the commission and now with this court—the breadth and depth of the public concern clearly indicates that others, including those who are American Indians, are also likely to raise the matter. We cannot therefore conclude that the matter will not be raised *at all* unless Barnard is allowed to raise it at this time.

Finally, the legal issues involved here have not been sufficiently well-defined or focused to merit judicial resolution. The proceeding before the division, which was "appealed" to the commission, was unrecorded and appar-

ently not available to the commission for review. In addition, the proceeding before the commission, although partially recorded and included in the record available to this court for review, was perfunctory and failed to deal in any meaningful way with the question of standing raised by the division. The order of the commission from which Barnard ostensibly appeals lacks any clear analysis of the legal issues raised on appeal and, thus, is of little help in setting the matter for judicial resolution.

Consequently, even if the issue presented by Barnard were an important public issue, Barnard still fails to meet the second test for standing.

### III.

■ Finally, Barnard may maintain his action if this case falls within those "limited circumstances in which a case raises issues that are so 'unique and of such great importance that they ought to be decided in furtherance of the public interest.'" *National Parks,* 869 P.2d at 913 (quoting *Terracor v. Utah Bd. of State Lands,* 716 P.2d 796, 799 (Utah 1986)). "This standard recognizes the need to have issues of great public importance resolved in compliance with the law when a court can act within its institutional and constitutional limitations." *Id.*

Therefore, in order for Barnard to successfully claim standing before this court under this third test, we must find that this dispute (1) raises a statutory or constitutional issue of substantial public import, (2) is presented by adverse parties, and (3) is otherwise suitable for resolution by the courts. *See id.* Unfortunately, Barnard chose to deal only superficially with these questions, both in his brief to this court and in his oral argument.

■ What Barnard presents to this court is a dispute with the division and the commission about the proper interpretation and application of the rules adopted by the division pursuant to statutory authority granted by the legislature. We can find no way to describe the specific dispute presented to us by Barnard as a "statutory or constitutional issue."

Barnard attempts to characterize the division's actions, and the commission's subsequent approval, as a violation of section 41–1a–411 of the Utah Code. However, that section merely grants permissive authority to the division and cannot be violated by the division's actions in this case. *See* Utah Code Ann. § 41–1a–411 (1993) ("The division *may* refuse to issue [personalized plates] offensive to good taste and decency...." (emphasis added)). The real issue is whether the division's actions violate its own rules, an issue to which we must give some deference to the division on review. *Kent v. Department of Employment Sec.,* 860 P.2d 984, 986 (Utah App.1993) ("[A]ppellate courts should employ an intermediate standard, one of some, but not total, deference, in reviewing an agency's application of its own rules.").

It is this failure to properly frame and explore the real issue *before* it reaches the appellate court that prevents us from accepting the matter for resolution. As it is presented to us by Barnard, we do not find the issue suitable for judicial resolution. The legislature has delegated to the Motor Vehicle Division of the Utah Tax Commission the task of reviewing specific combinations of letters and numbers for suitability for personalized license plates. A plate-by-plate review does not lie in the courts. Generally, "we will not substitute our judgment on matters of public policy normally left to the [agency's] discretion." *Patterson v. Utah County Bd. of Adjustment,* 893 P.2d 602, 604 (Utah App.1995). We will only act to ensure that the agency adheres to its rules in a reasonable and rational manner. Thus, Barnard fails to meet the third alternative test for standing, and we have no choice but to dismiss the appeal as being beyond our jurisdiction to entertain.

### CONCLUSION

Barnard has failed to meet any one of the three possible tests for standing. He has no sufficient personal stake or injury at issue.

He has not convinced us that he is either the only or the best party able to raise the issue. And while he does present what may well be an important public issue, he does not do so in the narrow framework of statutory or constitutional interpretation, supported by the careful legal analysis necessary for us to grant standing in the public interest. The appeal is dismissed.

DAVIS, Associate P.J., and JACKSON, J., concur.